CORNELIUS W. CARNRIGHT, RESPONDENT, *v.* MORGAN GRAY AND WILLIAM FRELIGH, EXECUTORS OF THE LAST WILL AND TESTAMENT OF SAMUEL P. FRELIGH, DECEASED, APPELLANTS.

*Consideration of a note — burden of proof in respect thereto.*

An action was brought upon the following promissory note:

"QUARRYVILLE, *September* 2, 1871.

"Thirty days after death I promise to pay to Cornelius W. Carnright fifteen hundred dollars, with interest.          "SAMUEL P. FRELIGH."

to which a defense was interposed denying that the note had been made, and alleging that there was no consideration therefor.

The plaintiff upon the trial rested his case without proving any consideration for the instrument.

Upon a motion made upon the trial for a nonsuit, the trial court held that, if the note was genuine, there was a presumption of a consideration, and that the burden rested upon the defendants to show that it was without consideration; that the absence of words of negotiability or words expressing a consideration did not change the rule.

*Held,* that although, if the fact of the existence of the consideration is assailed by evidence tending to disprove it, the burden of establishing the consideration upon the whole case may rest with the plaintiff, yet where there is no evidence to disprove the existence of a consideration, the note itself is *prima facie* evidence of its existence.

That, although the note was non-negotiable, it came within the provision of the statute (3 and 4 Anne, chap. 9, 1704; 1 R. L., 151; 1 R. S., m. p. 768, §§ 1–4) to the effect that a note in writing made and signed by any person whereby he shall promise to pay to any other person, or his order, etc., any sum of money, "shall have the same effect and be negotiable in like manner as inland bills of exchange, according to the custom of merchants." (LEARNED, P. J., dissenting.)

That the words "value received" do not constitute an essential part of a promissory note.

APPEAL by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of Ulster on the 2d day of January, 1890, and also from an order denying the defendants' motion for a new trial made upon the minutes of the court.

The action was tried at the Ulster County Circuit before the court and a jury, and a verdict was rendered in favor of the plaintiff for $3,395.75.

The action was upon a promissory note as follows :

"QUARRYVILLE, *September* 2, 1871.

"Thirty days after death I promise to pay to Cornelius W. Carn_ right fifteen hundred dollars, with interest.

"SAMUEL P. FRELIGH."

The defense was a denial that the testator made the note, and the answer further alleged that there was no consideration therefor.

*Peter Cantine,* for the appellants.

*F. L. Westbrook,* for the respondent.

LANDON, J. :

The jury decided the signature to be genuine upon testimony which, no doubt, admitted of a decision either way. This issue was sharply litigated. In the absence of any erroneous rulings we ought not to set aside the verdict upon this issue.

The plaintiff in the first instance rested his case without showing any consideration other than that which the note and his possession and production of it imported. The trial court refused to nonsuit the plaintiff, and held that, if the note was genuine, there was a presumption of consideration sufficient to authorize a recovery, and that the burden rested upon the defendants to overthrow it.; that the absence of words of negotiability, or expressing a consideration, did not change the rule. The defendants excepted.

Testimony was then given by the defendants tending to show that it was improbable that the plaintiff had any money to loan, or that the testator would have borrowed it; that the parties were unfriendly to each other. The plaintiff then adduced some testimony tending to impair this position of the defendants. The plaintiff did not attempt to show what the actual consideration was.

The court charged the jury that the note, if genuine, imported a consideration, and that the burden rested upon the defendants to show that it was without consideration.

Undoubtedly the rule is that the plaintiff by producing the note and proving the signature makes out a *prima facie* case of consideration, and, if nothing more is offered, is entitled to recover ; but if this *prima facie* case is assailed by evidence tending to dis-

prove it, the burden of establishing the consideration upon the whole case rests with the plaintiff. (*Perley* v. *Perley*, 144 Mass., 104.) When the transaction which resulted in giving the note is disclosed by the evidence, it is plain that the question of consideration should be determined upon the actual facts instead of upon the presumption which the note affords. (*Bruyn* v. *Russell*, 52 Hun, 17.) But in the present case the evidence does not disclose the transaction which resulted in giving the note. Its tendency, so far as it has any, is to show that it is improbable that the parties should have had such dealings with each other as to result in this note or any other like it. This evidence goes to the genuineness of the note, not to its consideration. But the jury have found the note to be genuine. There is nothing in the testimony, assuming the note to be genuine, that would sustain a verdict that there was no consideration. The evidence tends to show that the testator would not have given the plaintiff a note except upon consideration. The appeal thus depends upon the question whether this note on its face imports a consideration.

The note in question contains no words of negotiability. It is, therefore, not negotiable. (*McMullen* v. *Rafferty*, 89 N. Y., 456; *Cromwell* v. *Hewitt*, 40 id., 491.) Non-negotiable notes differ from negotiable ones in the particular that the indorser is regarded as a maker or guarantor, and not as a simple indorser (same cases); also in the further particular that the equities between the parties are not cut off by transfer to a *bona fide* purchaser for value before maturity. (*Maule* v. *Crawford*, 14 Hun, 193; *Lee* v. *Swift*, 1 Den., 565; *Barrick* v, *Austin*, 21 Barb., 241.)

But they are regarded as promissory notes under the statute of 3 and 4 Anne (ch. 9, 1704, enacted in this State in 1801; 1 R. L., 151); and in the Revised Statutes (vol. 1 m. p. 768, §§ 1–4) as follows:

Sec. 1. "All notes in writing, made and signed by any person, whereby he shall promise to pay to any other person, or his order, or to the order of any other person, or unto the bearer, any sum of money therein mentioned, shall be due and payable as therein expressed; and shall have the same effect, and be negotiable, in like manner, as inland bills of exchange, according to the custom of merchants."

§ 4. " The payees and indorsees of every such note payable to them or their order, and the holders of every such note payable to bearer, may maintain actions for the sums of money therein mentioned, against the makers and indorsers of the same respectively, in like manner as in cases of inland bills of exchange, and not otherwise."

Before the statute of Anne, inland bills of exchange and promissory notes payable to the order of the payee, were, by the custom of merchants, negotiable. With respect to inland bills of exchange, it was held that the indorsee could recover of the maker or acceptor, as the case might require, and that the custom of merchants had become the common law. It was held the same way in several cases with respect to promissory notes, but in *Clerke* v. *Martin* (2 Ld. Ray., 757; 1 Salk., 129), Lord Holt, C. J., held that the merchants could not change the law; and in *Potter* v. *Pierson* (2 Ld. Ray., 759; 1 Salk., 129), Lord Holt held that "this custom to oblige one to pay by note without consideration is void and against law."

The statute of Anne was enacted to reverse the ruling of Lord Holt, and to place promissory notes upon the same footing as inland bills of exchange, with respect to their negotiability and effect. The indorsee or transferree can recover upon them. See *Dunlop* v. *Silver* (1 Cranch Rep., 367), for a full exposition of the law and cases leading to the statute of Anne. The sections of our Revised Statutes above quoted are a substantial re-enactment of the statute of Anne. Both statutes, by their terms, refer to negotiable notes. They shall " be due and payable as therein expressed." Nothing is said in the statute about consideration, and hence the notes need recite none. The English courts, however, regarding the statute as remedial, extended the benefit of it beyond its literal terms and held that non-negotiable notes came within it, and that the payee could maintain an action within the statute against the maker. (Kyd on Exchange, 65, published in 1790; *Smith* v. *Kendall*, 6 Term Rep., 123; S. C., 1 Esp., N. P. C., 231; *Burchell* v. *Slocock*, 2 Ld. Ray., 1545.) That is to say, the payee could declare upon the note under the statute, instead of declaring upon the consideration or transaction which led to the giving of the note. If the non-negotiable note was within the statute, it imported a consideration without reciting it.

Such being the rule in England, it seems to have been assumed to be the rule in this State.

In *Downing* v. *Backenstoes* (3 Caines, 137), the note was non-negotiable and was declared upon as within the statute. The defendant demurred upon the ground that the note was not within the statute, and that, therefore, the declaration was bad because it did not allege the transaction and consideration upon which the note was given. The report states that counsel for defendant confessed that if the case were to be determined on the English decisions it would be against him, but if it were *res integra* in this court, he had much to say. The court said : "The very point was settled in *Green* v. *Long*, April Term, 1798, in conformity to the adjudications in Westminster Hall. Judgment for the plaintiff."

We understand that the rule thus announced has ever since been followed in this State without question. (*The President, etc.*, v. *Hurtin*, 9 Johns., 217 ; *Kimball* v. *Huntington*, 10 Wend., 675 ; *Paine* v. *Noelke*, 53 How. Pr., 273 ; 3 Kent. Com., 77.)

The same rule prevails in Massachusetts. (*Townsend* v. *Derby*, 3 Met., 363 : *Dean* v. *Carruth*, 108 Mass., 242.) The statute of Anne, though not enacted in that State, seems to be regarded as declaratory of the common law. (*Richards* v. *Barlow*, 140 Mass., 218.)

No definition of a promissory note requires the use of the words "value received." It is an unconditional promise in writing to pay a specified sum of money to another at some time certain to arrive. (Buller on Trials, 272 [edition of 1788] ; 2 Black. Com., 467 ; 3 Kent, 75 ; Kyd on Exchange, 18.) This definition, in substance, is in all elementary books. Negotiability is not an essential quality of a promissory note. (*Sibley* v. *Phelps*, 6 Cush., 172.) Of course, if both negotiable and non-negotiable notes are within the statute, neither needs the words "value received." Very possibly different rules prevail in different States. As was said by counsel in *Downing* v. *Backenstoes* (*supra*), if the question were *res integra* it this court, much could be said, but it seems to have been so early and positively settled that very little can be found in our reports upon the subject.

Judgment affirmed, with costs.

Mayham, J.:

Section 1 of title 2 of chapter 4, part 2 of the Revised Statutes (vol. 3, p. 2242 of 7th ed. of Banks' R. S.), which is a transcript of 1 Revised Laws, 151, passed in 1801, and which, in substance, re-enacts chapter 9 of 3 and 4 Anne, passed in 1704, seems broad enough to embrace both non-negotiable and negotiable promissory notes, and as that part of the section relating to non-negotiable notes is connected to the part of the same section relating to negotiable notes disjunctively, either non-negotiable or negotiable notes are promissory notes within that section, and if we read the section leaving out all that part which relates to negotiable notes or those payable to order, we will have an instrument containing all the elements of a non-negotiable promissory note. The section would then read : " All notes in writing made and signed by any person, whereby he shall promise to pay to any other person * * * any sum of money therein mentioned, shall be due and payable as therein expressed ; " by section 4 of the same title, if we read the same as it relates to the maker and payee only, we will have this provision : " The payees * * * may maintain actions for the sums of money therein mentioned against the makers." * * * Tested by this reading of the statute, we would find in the note in suit all the statutory elements of a promissory note ; and it will be observed that as the provisions of the first section are connected by the disjunctive " or," no misinterpretation of the whole section is effected by reading the same in the manner above indicated. If, then, this is a promissory note, neither words of negotiability or expression of a consideration upon its face are necessary as between the maker and payee to authorize a recovery. It is an unconditional promise in writing to pay a specific sum of money to another at a time certain to arrive, which completely answers the definition of a promissory note.

In *Paine* v. *Noelke* (53 How. Pr., 272) it was held that a note not negotiable imported a consideration, though none was expressed, and might be sued on without alleging or proving a consideration.

I think the trial judge committed no error in his charge or on the motion for nonsuit in holding that this note imported a consideration, although none was expressed upon its face, and it was non-negotiable, and that the judgment should be affirmed.

LEARNED, P. J. (dissenting):

This is an action on a written instrument alleged to have been made by the testator of the defendants in the words and figures following:

"QUARRYVILLE, *September* 2, 1871.

"Thirty days after death I promise to pay to Cornelius W. Carnright fifteen hundred dollars, with interest.

"SAMUEL P. FRELIGH."

Freligh died June 21, 1888. The answer denies the making of the writing, and alleges also that there was no consideration. The jury found a verdict for plaintiff of $3,395.75.

After the plaintiff had given evidence tending to show that the writing was in the handwriting of the testator he rested. The defendant moved for a nonsuit, among other grounds, that the plaintiff had not proved that there was any consideration. The court denied the motion. Evidence was then given by the defendants tending to show that the writing was not that of the testator. Some evidence was given on each side as to the condition of the plaintiff; as to the possibility or probability of his having the amount of money and being able to lend the same to the testator; and as to disagreements between plaintiff and the testator.

The defendants again moved for a nonsuit, insisting that the writing recited no consideration; and also that the burden of proof of consideration had been now shifted to the plaintiff, and that he could not recover without showing such consideration. This was denied.

The court charged the jury that the writing, if found to be that of testator, imported a consideration; that no proof of consideration was required to sustain it; that the burden rested on defendants to overcome this presumption by a preponderance of evidence and by showing that the writing was without consideration. To this the defendants excepted.

It was proved on the trial that plaintiff was a son-in-law of the testator, married in 1863; that he lived for some time in testator's family, till soon after the death of plaintiff's wife in 1871; that testator's first wife died in 1869, and that he married again in 1871. There was evidence that about this time an alienation of feelings

arose between plaintiff and testator, and continued, so that there was little intercourse. There was evidence that plaintiff, in 1879 and since, had been a stone measurer at fifteen dollars per week; that in 1877 he gave to testator his note for fifty dollars, which does not appear to have been paid by plaintiff. There was also evidence that testator was a lender of money, and that at the date of the alleged writing he had $4,392 on deposit to his credit in a savings bank. It was shown that, in 1866, the father of plaintiff conveyed to him and his wife a lot of land, the consideration expressed in the deed being $1,500; and that a few months afterwards, October 6, 1866, plaintiff and his wife conveyed the same to one Steenburgh, the consideration expressed in the deed being $4,500. No other proof of the consideration of the deeds was given. The plaintiff gave evidence of a conversation between the testator and one Gillespie two or three years after the death of plaintiff's wife. In that conversation testator is said to have stated that he loaned his daughter $1,500 when the farm was bought, and that she had brought back the money to him. This alleged conversation must have taken place about 1874. The recollection of the witness is very indistinct and vague. The matters thus briefly stated are substantially the only proof tending to show an actual consideration for the written promise in suit.

It was the general rule of the common law that no one could sue on a contract but the original party. The custom of merchants first, and the statute law afterwards, made the exception that a promissory note, payable to a person or his order, or to bearer, might be indorsed, or transferred and the indorsee or transferree could sue in his own name. It followed, too, as part of that custom of merchants, that defenses good against the original party were not good against the indorsee. A want of consideration was no defense against the indorsee. Hence, as against the indorsee, it was immaterial whether any consideration was expressed in the note by the words "value received" or otherwise. As against the payee, a want of consideration could be shown. But as it was not necessary to show consideration, even *prima facie*, against the indorsee, and as the words "value received" were, therefore, unimportant as to him, it was naturally said, generally, that as to negotiable notes those words were not necessary. The

negotiable character of the writing showed that it was made to be transferred, if the payee desired. Inasmuch as the words " value received " or other *prima facie* evidence of a consideration were immaterial, when the note passed to the indorser it readily followed that they should be considered unnecessary in the hands of the payee. But this arose from the fact that the note was negotiable, and from no other fact whatever. If it were not negotiable on its face the reason ceased.

Reference is often made to the statute of Anne (3 and 4 Anne, C. 9). The preamble is : " Whereas, it has been held " that notes in writings, etc., payable to order " were not assignable or indorsable over within the custom of merchants," etc. Then the statute enacts " shall be assignable and indorsable over in the same manner as inland bills of exchange," etc., declaring, also, that the indorsee may maintain his action in like manner as on inland bills. Hence it appears that the object of that statute was to secure the negotiability of notes, a matter which had been doubted. (*Buller* v. *Crips*, 6 Mod., 29 ; *Clerke* v. *Martin*, 2 Lord Raym., 757), and it is not disputed that no notes are negotiable which have not the word " order " or " bearer ; " although having the words " value received " they may be valid instruments and entitled to days of grace. (3 Kent's Com., 77.)

It has become the law now that the assignee of any contract may sue in his own name. We may, therefore, lose sight of the fact that negotiability was the principal peculiarity of notes by the custom of merchants, and by the law establishing that custom. (Chitty on Bills, 195.) Of course negotiability depends on the words " order " or " bearer " in the note. (*McMullen* v. *Rafferty*, 89 N. Y., 456 ; *Cromwell* v. *Hewitt*, 40 id., 491.)

The statute of our State is as follows : " All notes in writing, made and signed by any person, whereby he shall promise to pay to any other person or his order, or to the order of any other person, or unto the bearer, any sum of money therein mentioned, shall be due and payable as therein expressed." (1 R. S., m. p., 768, § 1.) This includes three classes of notes : First, notes payable to A B or order ; second, notes payable to the order of A B ; third, notes payable to bearer. No other notes are included. A note payable to A B without the words " order " or " bearer " is not included.

This is evident from the rest of the section, which is: "And shall have the same effect and be *negotiable* in like manner as inland bills of exchange, according to the custom of merchants." Now, as it is settled that a note without the words "order" or "bearer" is not negotiable, it is evident that this section does not include any note which does not contain one of these words.

The same is seen in the following section 4, which gives the right to maintain actions against makers and indorsers on a "note payable to them or their order, * * * as in cases of inland bills of exchange, and not otherwise." Now, the indorser on a non-negotiable note may be held as maker or guarantor, and is not entitled to notice of demand or non-payment. (*Cromwell* v. *Hewitt, supra.*) Therefore, he is not held as in case of inland bills, because in case of such bills there must be notice of demand and non-payment.

Whatever may be the proper construction of the statute of Anne, or of the present English statute (45 and 46 Vict., ch. 61, § 83), we must be governed by the Revised Statutes of our State. The plaintiff urges that section 1 is to be construed to include, first, a promise to pay to any other person; second, a promise to pay to *his*, the payee's, order; third, a promise to pay to the order of any other person; and fourth, a promise to pay to bearer. This cannot be correct. For the second would be the same as the third. And, further, such construction would make a note negotiable which had neither the word "order" or the word "bearer." A reference also to chapter 33, Laws of 1788, and to chapter 48, Laws of 1794 (which are the basis of our Revised Statutes) will show that the notes there mentioned are "assignable or indorsable," and the indorsees may maintain actions thereon. This shows that these statutes also had reference exclusively to negotiable and not to non-negotiable notes.

The proper construction of our statute, then, is, as above stated, that the words "or his order" are connected with the preceding words "to any other person;" and do not form a description of another kind of notes. The present note, then, is not a writing described by our statute. (Daniel's Neg. Paper, § 162.)

Now, it is the general rule that there cannot be a recovery on an alleged contract without proof of consideration. The words "for value received," in a note, are *prima facie* evidence of a consideration. (*Prindle* v. *Caruthers*, 15 N. Y., 425; *Blackman* v. *Cavin*,

21 Wkly. Dig., 445; Daniel on Neg. Paper, 163.) It has been shown above why, in a *negotiable* note, these words are not necessary; as is held in 3 Kent's Commentaries, 77. But where the note is not negotiable, it is a mere contract between the original parties, not intended for transfer; and a consideration must be shown. So it was held in *Edgerton* v. *Edgerton* (8 Conn., 6). Again, in *Bristol* v. *Warner* (19 Conn., 7), there was a note: "On demand, after my decease, I promise to pay J. W. B. or order $800," and the court held that it imputed a consideration *because it was, in form, negotiable,* and cited the preceding case.

"But such notes as are not negotiable by statute, or upon which no action of debt is authorized by statute, remain as at common law, and not importing a consideration, it must be alleged and proved." (Daniel on Neg. Paper, § 162.) In Parsons on Bills (p. 227) it is said that in negotiable notes, if there are no such words as "value received," in some States the presumption of consideration would be denied; in others, *perhaps* admitted.

It will be seen that Chancellor KENT says that, without negotiable words, the note is a valid instrument; is entitled to grace and may be declared on as a note. And this is what is meant by the common statement that a non-negotiable promise is a note under the statute of Anne, above cited. (3 Kent's Com., 77.) But immediately following these words he speaks, as above cited, of the words "value received," and says that "they are unnecessary, and value is implied in every *negotiable* bill, note," etc. Thus he limits his remark as to these words to *negotiable* paper, as he had previously explained it.

The case of *Kimball* v. *Huntington* (10 Wend., 675) was on a due bill: "Due A B $325, payable on demand." The defendant had pleaded a release *puis darein continuance.* The court said that this waived all former pleas, and that the question whether the due bill was a promissory note could not be raised on the trial. In fact, on the trial, plaintiff proved the loan of money and that the bill was given therefor. Therefore, the question of the necessity of proof of consideration could not arise. But, *obiter,* the court said that the words "value received" were not needed to bring this paper under the statute. The word "due" admits an indebtedness existing. The court cited *President, Directors, etc.,* v. *Hurtin* (9 Johns., 217). That was an action on a promissory note by which defendant

promised to pay plaintiff $125 " for five shares of the capital stock of said company," and the court said that the note expressed the consideration, as it plainly did. The court cited also *Downing* v. *Backenstoes* (3 Caines, 137), decided on demurrer to the declaration. It does not appear whether or not the words " value received " were in the note.

In *Dean* v. *Carruth* (108 Mass., 242), the note contained the words "value received." In *Underhill* v. *Phillips* (10 Hun, 591), it does not appear that the note was not negotiable.

*Cook* v. *Fellows* (1 Johns., 143), was an action on a due bill, and it was also held the plaintiff could not recover. *Lequeer* v. *Prosser* (1 Hill, 256) was an action on the guaranty of a note payable to bearer, and, therefore, negotiable.

It does not seem, therefore, that there is any controlling decision which holds that in a non-negotiable note it is not necessary to show a consideration, either in the note itself or by extrinsic evidence. Certainly this must be the rule upon principle. The plaintiff in order to show the defendant's liability must show a promise made on a good consideration. That rests upon him as a part of his affirmative case. There has been sometimes an attempt to hold that a consideration was not necessary in case of a written promise. (*Pillans* v. *Van Mierop*, 3 Burrow's, 1663.) But that is not the rule of our law. There must always be a consideration.

This view is especially applicable to a writing like the present, payable after the maker's death, and, therefore, from his estate; a writing which, without a consideration, would be an atttempt to make a testamentary disposition. (*Earl* v. *Peck*, 64 N. Y., 596; *Worth* v. *Case*, 42 id., 362.)

It cannot be doubted that between the original parties the question of consideration is open. And the matter thus far discussed is really whether the defendants must prove the negative. For certainly the note contains no admission by the maker that his promise was made on any consideration. It is very possible for one to make a written promise without any actual consideration. Then, however, he is not legally to be compelled to fulfill. If he admits a consideration, that admission is *prima facie* evidence against him. But if he make no admission, the plaintiff is put to other proof.

But further : It will be seen that on the trial evidence was given by defendant tending to show that the plaintiff did not have this amount of money to loan, and, in rebuttal, evidence was given by the plaintiff tending to show that he had property. It is plain that this evidence on each side was given on the question whether or not there was a consideration. Because if the note was entirely without consideration, the writing might, nevertheless, be genuine; and the note might have been intended as a gift. Therefore, the evidence that the plaintiff had no money to loan the deceased was evidence, so far as it went, on the point of consideration, and not on the genuineness of the writing. The writing might have been genuine, although no consideration passed to the deceased. On this point the court charged that "it is upon the defendant that the *onus* rests of assailing the consideration, to overcome the presumption by a preponderance of evidence, and showing that it was without consideration." In *Perley* v. *Perley* (144 Mass., 104) there was no question as to the form of the note. On proving the signature the plaintiff rested. Evidence was then given by each party in regard to the actual consideration, which evidence was conflicting. The court held that the burden of proving a consideration still remained with the plaintiff, notwithstanding the presumption arising from the note itself; and that if there was any evidence in the case on this point on behalf of defendant, the plaintiff must show *by a preponderance of the whole evidence* that the note was given for a valuable consideration. This same rule is stated in *Delano* v. *Bartlett* (6 Cush., 364); *Simpson* v. *Davis* (119 Mass., 269) and *Powers* v. *Russell* (13 Pick., 69). These are cases in which a consideration was expressed in the notes by the words "value received." Yet the court held, evidence on both sides having been given on the question of consideration, that the *onus* of proving consideration was upon the plaintiff on the whole case.

In this respect I think that injustice was done to the defendants. Assuming, now, that the writing could be given in evidence without proof of consideration, still the *fact* of a consideration was a part of plaintiff's case ; and the burden of that proof was on him. If, by a preponderance of evidence on the whole case, he failed to show a consideration, he could not recover. In the case of *Delano* v. *Bartlett* the plaintiff's counsel, relying on the note which pur-

ported a consideration, and thus making out a *prima facie* case, requested the court to charge that the burden of proof was on defendants to establish a want of consideration. But the court refused, and charged that the burden of proof was throughout on plaintiff to satisfy the jury, on the whole evidence, of the fact of consideration. And this was held to be correct. I think that this is a sound principle, and, therefore, that it was incorrect (in any view of the note), to charge that the burden rested on the defendants of showing that the note was without consideration.

A further point is urged by defendants, viz., that the verdict is against the weight of evidence. Ordinarily, we are not disposed to interfere with a verdict given on conflicting evidence. But this case is peculiar. There is no direct evidence to the fact of the execution of the note by the testator. The only testimony is that of witnesses who had seen the testator write, and who believed the note to be in his handwriting. Now, such testimony, of course, means only that there is a very great resemblance between the writing in question and other writing which the witnesses know to have been that of the testator. The opposing testimony is of a similar character. But under the present law of the State a great number of specimens of the handwriting of the testator were produced, and the jury were allowed to compare them with the disputed note. Now, on such a comparison, the jury have no advantage over the appellate court. The appellate court is just as able as the jury to determine whether a disputed handwriting is like other and undisputed specimens. There is no judging of the integrity and truthfulness of witnesses. And every one must see that the opinion of witnesses, as to the genuineness of handwriting, is only an opinion as to resemblance. In the present case, one witness for the plaintiff testified to his belief that three notes were in the testator's handwriting which were proved to have been written by another person a few days before the trial An unusual opportunity of comparison was given in this case by the production of an assessment-roll of 1870, containing eighty foolscap pages all written by the testator, in which some 3,000 names are written, including the testator's, and including his surname many times. There is thus an unusually full opportunity for the appellate court to examine in detail the testator's mode of making nearly all the letters of the alphabet,

capitals and small hand. There has also been exhibited to us on the appeal a great number of notes drawn up by the testator payable to himself or his order, and which were originally signed by persons owing him.

I have given all these papers a very careful examination. I ought not to comment upon them in detail lest I prejudice the parties on another trial. But I have come to the conclusion that, taking into consideration these papers and all the testimony in the case, the verdict should be set aside on the evidence. There is, I may remark, no evidence of any dealings between the parties which tends to give probability to the genuineness of the note, or to show a consideration therefor; and although the complaint alleges that this note was given for money lent by the plaintiff to the testator, nothing of that kind was shown by the slightest evidence.

For these reasons the judgment and order should be reversed, new trial granted, costs to abide event.

Judgment and order affirmed, with costs.