### HARDINGE v. UNITED STATES ZINC CO.

(Supreme Court, Appellate Division, First Department. March 10, 1916.)

1. BILLS AND NOTES &⇒493(3)—DRAFTS—CONSIDERATION—BURDEN OF PROOF.
   Plaintiff sued on several drafts drawn in his favor by defendant in payment of plaintiff's interest in certain ores, acquired under a bill of sale from a mining company which had sent the ores to defendant for smelting. The defense was that the mining company had disposed of the ores by bill of sale to a third person, executed previously to plaintiff's

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bill of sale. *Held* that, while the burden of going forward with the proof of such defense was on the defendant in the first instance to meet the prima facie case made by the execution of drafts, the burden of proof on the entire issue of consideration was on the plaintiff throughout the case.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1652–1654, 1656–1660, 1662; Dec. Dig. ☞493(3).]

2. GARNISHMENT ☞237—FOREIGN JUDGMENT—CONCLUSIVENESS.

Defendant, in further defense of such action, offered in evidence a judgment against plaintiff in a Colorado garnishment proceeding, wherein defendant was garnishee defendant, adjudging plaintiff's assignment from the mining company to be fraudulent and void, and that plaintiff be forever barred from asserting any claim under his assignment against the garnishee. *Held*, that such judgment was properly excluded from evidence, since the drafts constituted payment of plaintiff's claim to the ores, discharging any right plaintiff might have had in such ores, or the proceeds arising therefrom, in the hands of defendant as garnishee, and placing such proceeds pro tanto beyond the reach of the subsequent garnishment proceedings.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 439; Dec. Dig. ☞237.]

3. GARNISHMENT ☞237—FOREIGN JUDGMENT—JURISDICTION—CONCLUSIVENESS.

Such judgment against plaintiff in the garnishment proceedings was properly excluded from evidence for the further reason that, plaintiff being a resident of New York at the time the garnishment proceedings were instituted, and served only by publication in Colorado, having no property in Colorado, and never having appeared or answered in the garnishment proceedings, the Colorado court never acquired jurisdiction over plaintiff in such proceeding, rendering such judgment void.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 439; Dec. Dig. ☞237.]

Appeal from Trial Term, New York County.

Action by Franklin Hardinge against the United States Zinc Company. From a judgment for plaintiff, and an order denying its motion for a new trial, defendant appeals. Reversed.

Argued before CLARKE, P. J., and McLAUGHLIN, DOWLING, SMITH, and DAVIS, JJ.

Thomas D. Thacher, of New York City (Leland B. Duer and George Critchlow, both of New York City, on the brief), for appellant.

Martin Conboy, of New York City (Joseph F. Collins, of New York City, on the brief), for respondent.

DOWLING, J.   This action is brought to recover the amount of four drafts drawn by the defendant at Denver, Colo., directed to itself at 165 Broadway, New York City, dated February 6, 7, 8, and 10, 1912, whereby it required the payment to the order of the plaintiff of the respective sums of $653.89, $1,914.50, $1,840.89, and $727.50. The Lodge Consolidated Mining Company, a Colorado corporation, located at Silverton, San Juan county, Colo., and operating mines in that state, entered into an agreement in writing dated September 17, 1910, with the defendant, United States Zinc Company, a New York corporation, having offices at Denver, Colo., its home office in New

York City, and smelting works at Blende, Colo. By this agreement the Zinc Company bought the Mining Company's output of zinc concentrates up to 400 tons per month for the period of three years, at certain prices per ton based on the relative amounts of gold, silver, lead, and zinc therein contained. The Mining Company shipped ores and concentrates to the Zinc Company under this agreement, and as assays were completed the value of the ore and concentrates (less the smelting charges) was credited to the Mining Company by the Zinc Company on its books, and remittances made by the latter to the former from time to time. On January 13, 1912, the Mining Company made a bill of sale to W. A. Smith, agent, of San Juan county, Colo., by which in consideration of the sum of $10,000 to it in hand paid, it sold to Smith all concentrates owned by it, all returns for ores and concentrates sold and not then settled for, all moneys and checks due or in transit, or thereafter to be due from any Smelter Company (including all concentrates then at a mill near Chattanooga, Colo.), wherever found, both in mill and car, and concentrates loaded, then being shipped or theretofore shipped on certain specified cars of the Denver & Rio Grande Railway, together with all smelter returns therefor. The Mining Company advised the Zinc Company by letter dated January 14, 1912, that:

'In order to raise money for our pay roll and accounts, we were obliged to give the Silverton National Bank, Silverton, Colo., a bill of sale of all concentrates in transit, and not covered by the advance of $3,000 made by the Blende plant. Kindly send all settlements to the Mercantile National Bank, Pueblo, Colo., until further notice."

Smith was cashier of the Silverton National Bank. On January 17, 1912, he wrote the Zinc Company that:

'The Lodge Consolidated Mining Company have assigned to me as agent all of their concentrates. I suppose you have been advised to make all remittances to me as agent. This letter is to request you to make these remittances to the Mercantile National Bank, Pueblo, for account of the Lodge Consolidated Mining Company, until further advised."

On January 19, 1912, the Mining Company executed a bill of sale to Franklin Hardinge, of Chicago, in the state of Illinois, the plaintiff herein, whereby for the consideration of $5,000 it sold and transferred to him:

"The lead and zinc ores and the proceeds thereof, and the smelter returns therefrom, contained in cars partly in transit upon the Denver & Rio Grande Railroad, and partly delivered to the smelters of the United States Zinc Company at Denver and Pueblo, Colo., and American Smelting & Refining Company, said cars in lots being as follows: [Here follow the numbers of 78 cars] —and all ores in course of shipment the car numbers of which have not been ascertained. And the said railroad company and the said United States Zinc Company and each of them is and are hereby authorized, directed, and empowered to deliver and pay to said second party any and all the returns and proceeds of said ores, except so much thereof as previously has been consigned and sold to said Zinc Company and to the Silverton National Bank of Silverton, Colo."

The sale was specifically—

"subject to the several claims of the Silverton National Bank, of Silverton, Colo., United States Zinc Company, of Denver, Colo., and American Smelting

& Refining Company, of Durango, Colo., each of whom have prior claims against certain of the ores and proceeds aforesaid, and the said United States Zinc Company and the American Smelting & Refining Company and each of them are authorized and directed to pay and deliver to said Franklin Hardinge the proceeds and smelter returns for the ores aforesaid, after deducting the amounts accruing to them and each of them and accruing to said Silverton National Bank."

This bill of sale was acknowledged at Chicago by the officers of the Mining Company, which had an office there.   On the same day Hardinge forwarded the bill of sale to the Zinc Company at Denver, with a letter requesting that, after retaining the money due the Zinc Company on a prior claim and any money due the Silverton National Bank under the assignment filed with the company (evidently referring to the Smith bill of sale), the smelter returns should be turned over to Hardinge, who further stated that his bill of sale was given to secure the sum of $5,000.   Up to this time the Zinc Company had received no copy of the Smith bill of sale; so on receipt of the Hardinge bill of sale it wrote to "William A. Smith, Cashier, Silverton National Bank, Silverton, Colo.," acknowledging the receipt of his letter of the 17th inst. advising it of the sale to him as agent of all the Mining Company's concentrates, informing Smith that it had advanced the Mining Company $3,000 on account of the concentrates consigned—

"and after this advance has been satisfied, we will remit the proceeds on further shipments to the Mercantile National Bank, Pueblo, for account of the Lodge Consolidated Mining Company until further advised.   We have to-day received a bill of sale from Mr. Frank Hardinge, Chicago, from the Lodge Company, assigning him all proceeds on certain lots of zinc and lead concentrates, after our claims and those of your bank have been satisfied. Will you please advise the amount of your claim against the Lodge Consolidated Mining Company."

On the same day the Zinc Company wrote to Hardinge, acknowledging the receipt of the bill of sale, and stating:

"The Lodge Mining Company are indebted to us in the sum of $3,000 for advances on certain lots of zinc concentrates consigned to us, but we do not know the amount of their indebtedness to the Silverton National Bank, so that it will be necessary for us to be advised of the amount before we can pay you any money on account of the Lodge Company.   We have written to the bank to ascertain the amount of their claims against the Lodge Company, and on the receipt of this advice your bill of sale will be duly recognized."

On January 25th, a letter was sent to the Zinc Company by W. A. Smith, cashier, acknowledging receipt of its letter of the 22d inst., and saying:

"That the amount covered by the bill of sale in the Lodge Consolidated Mining Company to me as agent is $10,000."

The Zinc Company on February 3d acknowledged the receipt of this letter, and added:

"Please advise the amount paid on this [$10,000] as soon as possible."

No reply was received to this communication until February 9th, as hereinafter set forth.   Meantime, on February 2d, the cashier of the Zinc Company's Durango plant wrote to the chief clerk at the Denver

office, advising him that they had paid the Silverton National Bank $6,657.93 to date for settlements due the Mining Company, which amount, added to the $807.04 advised by the Denver office, made a total payment of $7,464.97, leaving the amount still due at that date $2,535.03.

"We note that we are to advise the Silverton National Bank that, after the amount still due them is paid, all subsequent payments are to be credited to the account of Mr. Franklin Hardinge under the bill of sale given to him by the Lodge Consolidated Company on January 19th."

The Zinc Company, having smelted the Mining Company's ores, paid itself the amount of its $3,000 advance, and paid the Silverton National Bank the full $10,000, drew the four drafts in suit on its New York office on February 6th, 7th, 8th, and 10th, to the order of plaintiff; the drafts bearing indorsements showing the shipments of ore from the Mining Company against which the payments were made. It mailed them to plaintiff at Chicago, Ill., who deposited them in his bank there and they were forwarded to New York for collection. But on February 9th Smith had suddenly changed front, and despite his previous statements, which could only mean that the bill of sale was security for the repayment of $10,000 to him as agent for the bank, he wrote the Zinc Company on February 9th, in reply to its letter of the 3d:

"That it is not a question of amount covered in bill of sale given to me by the Lodge Consolidated Mining Company, but the number of cars or amounts of concentrates that I bought. I have advised the office of the United States Zinc Company at Pueblo by letter and phone what cars I have bought, and instructed them to make all remittances for said zinc concentrates to the Mercantile National Bank of Pueblo for my account. Kindly see that my instructions are carried out in this matter. There are 17 cars of zinc not yet settled for that belong to me. The numbers of these cars have been furnished the United States Zinc Company."

Upon receipt of this letter, and on February 12th, the defendant stopped payment by telegraph of the drafts in question, and on presentation they were dishonored. The telegram sent by defendants to its New York office read:

"These checks paid on assignment, and validity of assignment now questioned."

The telegram to plaintiff read:

"Have been advised validity of Lodge assignment is to be contested. Have therefore given instructions not to pay checks issued to you. Please do not present them for payment."

As a matter of fact the Zinc Company was not then contesting the validity of the bill of sale to plaintiff, but Smith was claiming that his bill of sale was absolute (after having had the benefit of the payment to him of $10,000 under his claim that it was security for that amount only) and that it covered the property transferred to plaintiff as security for his debt of $5,000. On February 13th the Zinc Company wrote Smith, referring to his letter of the 9th and said:

"This is the first notice that we have received from you indicating that the proceeds from certain cars were to be turned over to you, all previous

information upon this subject being contained in letters, reference to which was made in my letter of yesterday, and all of which letters indicated that the amount of your claim was $10,000, without reference to any particular cars. We regret that you did not furnish us with this copy of your bill of sale earlier, as a number of cars mentioned in same had been settled for and paid to other parties upon assignments made by the Lodge people, so that it is impossible for us to remit any further proceeds upon these cars in question, as our records indicate that they have all been paid for."

The testimony shows that the term "other parties" in this letter referred to Hardinge, so that the Zinc Company regarded the giving of the drafts to him as payment of the cars in question to the Mining Company and an extinguishment of its obligation to them pro tanto, as well as payment to Hardinge under the bill of sale. The transaction was complete up to this point, and defendant had no defense against the drafts, unless they were given without consideration; that is, unless the bill of sale to Smith was absolute, and not merely security for $10,000, in which event the Mining Company had nothing left to sell to Hardinge or to transfer to him as security for his debt of $5,000. This defense of lack of consideration, is the one which was submitted to the jury, which has found in favor of plaintiff.

[1] We should have no hesitation in affirming the judgment, for the verdict is fully justified by the evidence, were it not for an error in the ruling of the court as to which party had the burden of proof. After the jury had been impaneled, defendant's counsel claimed the right to open and close, but did so solely on the ground that "if the case rested here on the pleadings, without further proof, we would be cast in judgment," but declined to discuss the question of the ultimate burden of proof. He was given the right to open, and did so. The learned court submitted to the jury the sole question of whether the drafts were without consideration:

"If they were, the plaintiff cannot succeed. If there was a sufficient consideration for them, and you find the fact to be that there was consideration, the plaintiff is entitled to succeed. The defendant, by raising this question of consideration only, assumes what in law is known as the burden of proof."

And he proceeded to instruct them thereupon and upon the facts at issue in a very fair and thorough charge, to which defendant took exception only in regard to the burden of proof being upon it and to a question of interest. The only issue being that of the consideration for the drafts, the question of which party was charged with the burden of proof was vital. We think the learned court was in error in holding that it rested on defendant. As upon the pleadings herein defendant would have been cast in judgment if no proof whatever had been introduced, the burden of going forward was upon it, and this carried with it the right to open and close. Defendant relied upon its second affirmative defense, which set forth that the sole consideration for the drafts was the bill of sale to Hardinge, which was of no force because of a prior absolute sale of the same property to Smith. The answer denied that the drafts were drawn and delivered for value. But neither the pleadings nor the right given to it to open and close cast upon defendant the burden of proof. As was said in Carnright

v. Gray, 57 Hun, 518, 11 N. Y. Supp. 278, affirmed 127 N. Y. 92, 27 N. E. 835, 12 L. R. A. 845, 24 Am. St. Rep. 424:

"Undoubtedly the rule is that the plaintiff, by producing the note and proving the signature, makes out a prima facie case of consideration, and, if nothing more is offered, is entitled to recover; but, if this prima facie case is assailed by evidence tending to disprove it, the burden of establishing the consideration upon the whole case rests with the plaintiff. Perley v. Perley, 144 Mass. 104 [10 N. E. 726]. When the transaction which resulted in giving the note is disclosed by the evidence, it is plain that the question of consideration should be determined upon the actual facts, instead of upon the presumption which the note affords."

So in Bruyn v. Russell, 60 Hun, 280, 14 N. Y. Supp. 591, it was held that the burden of proving a consideration, notwithstanding the use of the words "value received," remained at all stages of the case with the plaintiff, and that a charge to the jury which implied that it was for the defendants to show that the note was without consideration was erroneous. In the course of its opinion the court said:

"This question was considered in Perley v. Perley, 144 Mass. 104 [10 N. E. 726]. The court said of a note that its production and proof of defendant's signature made a prima facie case. 'But the burden of proving a consideration still remains upon the plaintiff, notwithstanding this presumption, and, if there is any evidence on this point on behalf of the defendant, the plaintiff must show by a preponderance of the whole evidence that the note was given for a valuable consideration.' The court pointed out that, if the defendant sought to meet the note, not by evidence showing want of consideration, but by proving another and distinct proposition, then the burden of proving the latter proposition was on him. For instance, if he attempted to meet the note by proving payment, the burden of that proof would be on him. But, on the other hand, when the defendant disputed the fact of a consideration and produced evidence to show that no consideration existed, then, on that point, the burden remained with the plaintiff on the whole evidence. This same doctrine is held in Simpson v. Davis, 119 Mass. 269 [20 Am. Rep. 324], and Delano v. Bartlett, 6 Cush. 364, where it was held that, the evidence on both sides being applicable to the same issue of consideration, the jury were properly instructed that the burden was throughout on the plaintiff to satisfy them, on the whole evidence, of the consideration of the note. This doctrine is recognized in Carnright v. Gray, 57 Hun, 518 [11 N. Y. Supp. 278], in both the prevailing and dissenting opinions. The rule is laid down in 1 Daniel on Negotiable Instruments, § 164, where it is said: 'If the whole evidence offered on both sides leaves it in doubt whether there was a good consideration or not, the plaintiff fails of making out his case and the defendant will be entitled to a verdict.' * * * General expressions may be found that the words 'value received' are prima facie sufficient, and that the plaintiff may rest on them; the defendant then being permitted to give evidence of a want of consideration. But the point we are considering is where the burden lies on the whole evidence, and we think it lies with the plaintiff."

In Bringman v. Von Glahn, 71 App. Div. 537, 75 N. Y. Supp. 845, which was an action upon a promissory note made by defendants in favor of plaintiff's intestate, defendants admitted the making and delivery of the note, its nonpayment, and the status of plaintiff, but denied that the note was given for value, or that any consideration was given therefor. The court said:

"When the plaintiffs read it [the note] in evidence they became entitled to the presumption that it was 'a valid obligation based upon a good and legal consideration, and the burden of showing that there was a want of consideration rested upon the defendant.' Durland v. Durland, 153 N. Y. 67 [47 N.

E. 42]. They could, therefore, then safely rest. If the defendant had offered any evidence that showed or tended to show want of consideration, then it was incumbent upon the plaintiffs to show by a fair preponderance of evidence upon the whole case that there was consideration. But as the testimony offered by the defendant did not show or tend to show any failure of consideration, the judgment must be reversed and a new trial ordered."

In Lombard v. Bryne, 194 Mass. 236, 80 N. E. 489, the court said:

"On the question whether there was a consideration for the note, the burden of proof was on the plaintiffs throughout the trial. The evidence offered by the defendant was on that issue, and was intended to meet and answer the contentions of the plaintiffs. If, on the whole evidence, the matter in dispute was left in an even balance, the plaintiffs would fail. This is not like a case where the defendant seeks to avoid the effect of prima facie evidence by the proof of an independent fact, outside of the issue, whereby he is relieved from liability. In such a case the defendant has the burden of proving the fact, and, if he fails, the original prima facie case prevails."

To the same effect is Perley v. Perley, 144 Mass. 104, 10 N. E. 726.

We believe the case at bar comes within this line of authorities. Plaintiff's only consideration for the making and delivery of the drafts in question was his ownership of certain undisputed claims of the Mining Company against the Zinc Company, evidenced by a bill of sale given to him by the former company, and which, when recognized by the latter, substituted him as the creditor to whom payment was to be made. In giving its drafts, defendant was paying and discharging its obligations pro tanto to the Mining Company, and plaintiff had no right to the drafts unless he held a valid and enforceable transfer from the Mining Company of the property transferred or its proceeds. The defendant met the very issue of consideration tendered by plaintiff by endeavoring to prove that there was an entire failure or absence of such consideration, because plaintiff never acquired title, under the bill of sale to him, of any property whatever belonging to the Mining Company in defendant's possession, or the proceeds thereof in its funds, because the Mining Company had previously parted with all right, title, and interest in the same property and the same proceeds to Smith. It did not succeed in convincing the jury that its contention was correct; but, while we do not mean to intimate that their finding was not fully warranted, the defendant was entitled to have the issue submitted to them in a charge which placed the burden of proof where it properly belonged—upon the plaintiff.

In so holding we are not unmindful of a number of cases, whereof Sharples v. Angell, 46 App. Div. 329, 61 N. Y. Supp. 643, is an example. That was an action on a check, payable to plaintiff's order, given in payment for a separator, which defendant claimed was sold with a guaranty that it would do work of a certain amount and kind, and that, as it did not meet the guaranty, defendant returned it to plaintiff and stopped payment on the check. The court there held that the burden of establishing that the separator did not answer the guaranty given was on the defendant; that the consideration for the check was the sale and delivery of the separator, as defendant conceded and gave no evidence to negative that proposition, but the

guaranty that the separator would do certain work and its breach constituted another and distinct proposition. "The existence of an additional contract and its breach must be established," the court said, "before the consideration  *  *  *  is at all challenged or impeached; and clearly, within the rule above cited, the burden of establishing that rests with the defendant." In the case at bar there is no question of any additional or distinct consideration raised by defendant; but it attacks the validity of the very consideration claimed to have been given to it by plaintiff—the extinguishment of a claim of $5,000 against defendant in favor of plaintiff by transfer from the Mining Company —and seeks to show the failure of that same consideration because the Mining Company had no right to sell said claim to plaintiff, having theretofore parted with and transferred the same to another.

[2] The only other question which we feel called upon to discuss is that presented by defendant's exceptions to the refusal to receive in evidence proof of its third separate defense. The facts sought to be established were as follows: After the events heretofore stated, and on February 13, 1912, defendant was served in Colorado with a garnishee summons and writ of attachment issued out of the district court, city and county of Denver, in an action brought by R. W. Hollis, trustee, against the Mining Company to recover $5,500. Similar summonses and writs were issued and served on defendant in suits brought against the Mining Company: (1) On February 16th in district court, San Juan county, by Abe Melanson ($5,549.95); (2) on March 4th in district court, Denver, by Hendrie & Bolthoff Manufacturing & Supply Co. ($3,741.81); (3) on March 9th in district court, San Juan county, by Joseph Bordeleau ($3,066.80); (4) on the same date in same court by Fred Goble ($7,068.26); (5) on March 12th in same court by San Juan Lumber Company ($585). In these actions the Zinc Company answered, and among other things set up Hardinge's claim to certain ores and concentrates and the proceeds thereof by reason of the bill of sale thereof to him from the Mining Company, but did not plead the delivery of the drafts in question to Hardinge by it in payment of his claim and in discharge (to the extent of such payment) of the Zinc Company's obligation to the Mining Company. To this answer a reply was interposed, which among other things alleged that the Zinc Company was indebted to the Mining Company in the sum of $11,448.56 (excluding any credit for the payments to Smith and Hardinge), and further setting up that the assignment of any interest to Hardinge "was not based upon any good or valuable consideration, and that the same was void and of no validity." Thereupon, pursuant to the provisions of the Colorado statutes (Code of Civil Procedure of Colorado, chapter 7, sections 137, 138), in the actions brought by Hollis, trustee, and the Hendrie & Bothoff Manufacturing & Supply Company (ultimately consolidated), citations were issued on May 2, 1912, requiring Hardinge to appear and set up and defend his claim under his assignment to any part of the choses in action, claims or effects garnisheed in the hands of the defendant, or be thereafter barred and precluded from urging and relying upon the same. The sheriff of the county of Denver, having received the

citation, made return on May 13, 1912, of his inability to make service thereof.

On June 1, 1912, the Mining Company was adjudged a bankrupt on the petition of creditors, and in September Fred Goble, the trustee in bankruptcy (who had been appointed on August 2d) was substituted as plaintiff in the actions. On September 28th an order was made for the publication of a citation on an affidavit that Hardinge was a resident of Chicago, in the state of Illinois, and service was made by publication in the Denver Daily Journal once a week for four weeks and by mailing a copy to Hardinge at Chicago, Ill. Hardinge not having appeared or answered, judgment was taken against him by default on January 21, 1913, adjudging:

"That the said claim and assignment, or pretended, claim and assignment, of the said Franklin Hardinge against the said moneys, choses in action and effects in the possession of the said garnishees is wholly fraudulent, void and of no effect whatever, and constitutes no lien upon or claim against the same."

And further:

"That the said Franklin Hardinge is hereby forever barred and precluded from urging and relying upon any claim to or assignment of any funds, moneys, choses in action, or effects of said the Lodge Consolidated Mining Company set forth or described in the answers of said garnishees, or either of them, herein, against said garnishees, or either of them, or against said Fred Gobel as said trustee in bankruptcy of said Lodge Consolidated Mining Company, and substituted as plaintiff in the above-entitled causes."

[3] There are two objections to the binding force of the Colorado judgment, either of which would seem to be fatal. The first is that, when the garnishee proceedings were begun and the citations issued, the Zinc Company had paid Hardinge in full for his interest under the bill of sale; the drafts having been given and received as such payment, and the indebtedness to the Mining Company having been paid and discharged to that extent, as the record fairly establishes, so that as to this fund of $5,000 it was beyond the reach of garnishment or attachment. The second is that the Colorado court never had jurisdiction to make any valid judgment as against Hardinge. He was a nonresident of Colorado, being a resident of Chicago, Ill. He is not shown to have had property of any kind in Colorado. The drafts were out of that state, having been mailed to and received by him in Chicago and then transmitted to New York City for collection. The defendant was a New York corporation, and the drafts were to be paid in that state. Neither the person nor property of Hardinge being in the state of Colorado, and he never having appeared or answered in the action in that state, the Colorado court never acquired jurisdiction over him, and its judgment is not binding on him. The refusal to admit in evidence the proceedings in the Colorado suits was therefore proper.

The judgment and order appealed from are reversed, and a new trial ordered, with costs to appellant to abide the event. Order filed.

CLARKE, P. J., and McLAUGHLIN and DAVIS, JJ., concur. SMITH, J., concurs on first ground.