## DANIEL T. WOOD *vs.* MERCY J. WOOD and others.

Where land is devised to the children and heirs at law of the testator, after the payment of debts, if it does not appear that the devisees have taken possession of the real estate, or have accepted the devise to them, or promised to pay, or have paid, any portion of a debt owing by the testator, or sold the land or any part of it, as heirs at law of the testator, they are not personally liable to pay the debt.

In an action brought by a creditor, against heirs and devisees, for the recovery of a debt owing by the testator, a judgment may be entered that the plaintiff's debt be levied and made of the lands and tenements of the testator described in the complaint, notwithstanding the demand in the complaint is for a judgment against the defendants personally.

An action brought to reach real estate which a testator devised to the defendants, and to have the same sold, for the purpose of satisfying a debt which the testator owed to the plaintiff, is an action *in rem*, for equitable relief, of which the supreme court had not jurisdiction previous to the code ; and may therefore be commenced at any time within ten years after the cause of action accrued.

The provisions of the code, relative to the time for commencing actions, do not apply to cases where the right of action accrued prior to the time the code took effect.

Where, upon the dissolution of a partnership between the plaintiff and W., it was agreed between them that the plaintiff should proceed to collect the debts due to the firm, and apply the same to the payment of the debts for which each partner was solely liable, and also all debts owing by the firm ; and if there should be a deficiency of debts due to the firm to pay the debts owing by them, each partner should pay one half of the deficiency, and if there should remain a surplus after making such payments, that the same should be divided between them ; *Held* that the plaintiff was entitled to a reasonable time in which to collect and pay the debts ; that two years and thirty-eight days was not an unreasonable time for that purpose ; and that until after the expiration of such reasonable time, the one half of a deficiency owing to the plaintiff from W., under the contract, did not become due, and therefore the statute of limitations did not commence running.

Where, by the terms of a will, the testator gives to his children all the rest and residue of his real and personal property "*after the payment of his debts*," the debts are impliedly charged upon the estate devised ; and in case of a deficiency of personal estate, there is a manifest equity in applying the real estate to the payment of debts.    And it will be so applied, in an action for that purpose, brought by a creditor, against the devisees.    GRAY, J., dissented.

APPEAL from a judgment entered at a special term, upon the report of a referee.    The plaintiff and Jacob Wood

Wood *v.* Wood.

were partners in business, at Ithaca. By an agreement, dated April 10, 1840, the partnership was dissolved. That agreement, after providing that Jacob Wood was to have certain promissory notes and claims, amounting in all to $1613, and the bark mill, leather, and tools at the tan-yard, horses and neat stock, wagons, harness and farming utensils, and pew in church, it further provided, that the goods in store should be divided equally between the parties. It next recited that D. T. Wood was liable, individually, for debts of the firm, to the amount of rising of $1000, and Jacob Wood in like manner to rising of $1000. It then provided that D. T. Wood should at the proper costs and charges of the parties, take charge of and collect all the debts due to the said parties, and apply the same to the payment of the aforesaid indebtedness, and all other debts of the firm. In case of a deficiency of debts due the firm, to pay the debts of the firm, each party was to pay half the deficiency, and if any surplus, the same to be divided. The amount of debts of the firm appeared, upon evidence furnished by the plaintiff's books of account, to have been $5378.88, and the amount of debts due to the firm $1630. All the debts of the firm were paid *prior* to the 15th of June, 1842. The plaintiff then knew that a portion of the assets, on hand, were bad and uncollectible. Jacob Wood died May 18, 1842, leaving a last will, which was admitted to probate, and letters of administration with the will annexed issued on the 23d of May, 1842. On the 11th February, 1851, the administrators were, on application of creditors, ordered to render an account. A final account was rendered on the 12th September, 1851, and by the surrogate's decree it appeared there was a deficiency of assets to pay the debts of said Jacob Wood, and that there was in the hands of the administrator, to be distributed, $1067.53, of which $235.80 was ordered to be paid to the plaintiff as his distributive share thereof. Besides the said $235.80, the administrators had, from time to time, paid the plaintiff, as appeared by the referee's report, in all $549.05. The will bequeathed a *specific legacy, a note for* $1000, to

James Munger; devised certain real estate to Sylvester Munger and his heirs; and to these defendants, "after the payment of his debts," all the rest of his real and personal property. The plaintiff alleged a large balance due him from the estate of Jacob Wood, and sued the defendants as devisees, demanding judgment against them for the amount, with interest and costs. The cause was tried at a special term, upon a report of facts by the referee, and judgment was given for the defendants. On appeal to the general term, judgment was reversed, and the referee was directed to state an account. Upon a second trial at special term, judgment was ordered for the plaintiff, and was entered for the amount reported by the referee. The defendants appealed from the judgment.

*H. A Dowe,* for the appellants.

*A. Wells,* for the respondent.

BALCOM, J. The plaintiff brought this action as a creditor of Jacob Wood deceased, who died on the 18th day of May, 1842, leaving a last will and testament, by which the real estate, described in the complaint, was devised to the defendants in fee, as tenants in common. The defendants are the children and only heirs at law of Jacob Wood deceased. They would own the land described in the complaint in fee, as his heirs at law, if Wood had died intestate; and they can claim title to it in fee as devisees under his will.

The complaint seems to have been framed under the belief that the plaintiff was entitled to have his debt against Jacob Wood deceased satisfied out of the real estate therein described, to which the defendants have title in fee as tenants in common, whether they should claim the same as devisees of the deceased or as his only heirs at law; and it is probable that the pleader supposed the defendants might be made personally liable for the alleged debt by the judgment in the action. But whatever notions the pleader may have entertained when he

Wood *v.* Wood.

drafted the complaint, I think it is sufficient, or may be made sufficient by amendment without doing injustice to the defendants, to entitle the plaintiff to recover in the action, if the conceded facts and evidence show that he has a cause of action against the defendants, whether it be legal or equitable.

Errors in pleadings must now be fatal to the action or defense, or they will be disregarded or cured by amendments in furtherance of justice, both before and after judgment. (*Code,* §§ 169, 173, 176.) A plaintiff who expects to recover in an action, when there is a substantial defense to it, solely by reason of defects in the answer, or a defendant who thinks of succeeding in an action upon errors in the complaint, without regard to the merits of his defense, may as well stay out of court as to come in, under the code. (1 *Kernan,* 368; 3 *id.* 127, 322. 12 *How. Pr. Rep.* 322, 293; 11 *id.* 168.) The language of section 176 of that act is imperative, that "the court shall, *in every stage of an action,* disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." And when the courts construe the allegations of pleadings *liberally,* (as section 159 of the code enjoins,) with a view to substantial justice, parties who are in the right on the merits of cases, will succeed; and the efforts of lawyers over technicalities in pleadings will lose all their charms. (*See* 2 *Kern.* 433.) But I have said enough on this question, and will now proceed to the consideration of other branches of the case.

It does not appear by the pleadings or proofs that the defendants have taken possession of the real estate described in the complaint, or have accepted the devise to them of the same by Jacob Wood deceased; or have promised to pay, or have paid, any portion of the plaintiff's debt against the deceased; nor have they sold such real estate, or any part of it, as heirs at law of the deceased; therefore they are not personally liable to pay the plaintiff's debt. (2 *R. S.* 454, §§ 47, 49, 51; *id.* 456, § 60. *Schermerhorn* v. *Barhydt,* 9 *Paige,*

28. *Kelsey* v. *Western,* 2 *Comst.* 500. *Tole* v. *Hardy,* 6 *Cowen,* 333. *Dodge* v. *Manning,* 11 *Paige,* 334; *S. C.* 1 *Comstock,* 298. *Elwood* v. *Deifendorf,* 5 *Barb.* 398.) It is true that the plaintiff's demand of judgment in the complaint is against the defendants personally; but that may be disregarded, or changed, or regarded as changed, in furtherance of justice: and I am of the opinion it should not affect the plaintiff's rights in the action, because the judgment is, that his debt be levied and made of the lands and tenements of Jacob Wood deceased, described in the complaint, and no other. (2 *R. S.* 454, § 47; *Id.* 456, § 60.) Section 275 of the code, and the decision of the court of appeals in *Marquat* v. *Marquat,* (2 *Kern.* 336,) show that such a judgment may be given, notwithstanding the demand of judgment in the complaint is personal against the defendants. If there be an answer, the court may grant the plaintiff " any relief consistent with the case made by the complaint and embraced within the issue." (*Code,* § 275.)

No execution can be issued upon the judgment except such as shall require the sheriff to satisfy the same out of the property of the deceased, described in the complaint. (*Code,* § 289, *subd.* 2. 2 *R. S.* 363, § 3; 367, § 25.) Therefore no wrong can be done to the defendants in enforcing the judgment: and inasmuch as their substantial rights have not been affected by reason of the form of the judgment entered against them being different from the one demanded in the complaint, they cannot have a new trial on this branch of the case.

The basis of the action is the debt which Jacob Wood deceased owed the plaintiff; but that is not the gist of it. It is not an action for the recovery of money only, although the ultimate object of it is to obtain money; nor is it one for the recovery of specific real property, for the plaintiffs cannot have the land described in the complaint as the fruits of the litigation; but it is an equitable action to reach certain real estate, which Jacob Wood deceased devised to the defendants, and to authorize its sale for the purpose of satisfying a debt that

Wood v. Wood.

the deceased owed the plaintiff. It is strictly an action *in rem*, for no facts are set out in the complaint, and none were established on the trial, to support a claim against the defendants personally. It was not a case for a jury, but the issues in it were triable by the court. (*Code*, §§ 253, 254. *Draper* v. *Day*, 11 *How. Pr. Rep.* 439.) In other words, it is an action for equitable relief, of which the supreme court had not jurisdiction prior to the enactment of the code. (*Elwood* v. *Deifendorf*, 5 *Barb.* 398, 411. 3 *Cowen*, 133. 6 *id.* 333. 7 *John. Ch.* 116. 9 *Paige*, 28.) It could therefore be commenced at any time within ten years after the cause of action accrued, either by the revised statutes or under the code. (*Code*, § 97. 2 *R. S.* 301, § 52. 2 *Denio*, 586.) The code took effect on the 1st day of July, 1848; (*Laws of* 1848, *p.* 565, § 391;) and the plaintiff's cause of action accrued against the defendants before that time. The times prescribed by the code, in which actions must be commenced, do not apply to cases where the right of action accrued prior to the time it became in force. (*Code*, § 73. 2 *Kernan*, 635.) The limitations contained in the revised statutes, therefore, apply to this case; but so far as they affect actions like this, they are similar to those in the code. The code does not affect proceedings by creditors of deceased persons to collect their debts out of real estate devised or descended, " except that when in consequence of any such proceeding a civil action shall be brought, such action shall be conducted in conformity to *that* act;" and except also, that where any particular provision touching such proceedings shall be inconsistent with that act, such provision shall be deemed repealed. (*Code*, § 471.)

If section 73 of chapter 460 of the laws of 1837 applies to suits against devisees as well as heirs, it does not give creditors the right to bring either legal or equitable actions as their fancies may suggest. It has already been shown that devisees may make themselves personally liable to pay the debts of their testator by accepting the devises and promising to pay the debts, and in other ways; and heirs may also make them-

selves personally liable for the debts of their intestate. And when they become personally liable to pay such debts, purely legal actions may be sustained against them, to recover the same. (3 *Cowen,* 133, 612. 6 *id.* 333. 5 *Barb.* 398. 1 *Comst.* 298. 6 *Hill,* 350. 2 *R. S.* 454, § 49.) Hence all that section 73 of the act of 1837 before mentioned, does, is to compel creditors to sue heirs and also devisees, (if it applies to the latter,) *jointly* when they are liable at law, and also *jointly* when they are only liable in equity. (*See also* 2 *R. S.* 456, § 60.)

At what time did the plaintiff's cause of action accrue? The contract, on which the plaintiff founds his claim against the estate of Jacob Wood deceased, bears date the 10th day of April, 1840. The plaintiff and the deceased were partners up to that date. They then had goods on hand, and debts were due them, as partners. The contract dissolved their firm; and it provided for a division of their goods between them. And it showed that the plaintiff was solely responsible for debts which the firm ought to pay, amounting to upwards of $4000; and that the deceased was solely responsible for debts, on account of the partnership, to an amount exceeding $1000. It was therefore stipulated in the contract, that the plaintiff should, at the proper costs and charges of the parties, take charge of and proceed to collect all the debts due to the firm, and apply the same to the payment of the debts for which each partner was solely liable on account of the firm as above mentioned, and also all debts owing by the firm; and if there should then be a deficiency of debts due to the firm, to pay the debts owing by the firm, and what each partner was solely liable to pay, each partner agreed to pay one half of the deficiency; and if there should remain a surplus after all such payments, then they were to divide such surplus between them.

The plaintiff went on, under this contract, collecting the debts due the firm and paying debts owing by the firm, until March 15, 1852, when he wound up the business, and

ascertained that the firm was owing him a balance; one half of which is the claim against the estate of the deceased on which this action is predicated.

The plaintiff was entitled to a reasonable time to collect the debts due to the firm and pay the debts specified in the contract above mentioned, before the deceased could require him to account; and the plaintiff was bound to perform the contract, so far as it could be performed by him, before calling on the deceased for one half of any deficiency which the firm was owing him. Such deficiency could only be ascertained after the plaintiff had collected the good debts due to the firm; and the plaintiff being entitled to a reasonable time in which to make such collections, the half of the deficiency that the deceased owed him, did not become due until the expiration of such reasonable time. And I am of the opinion that the time between the date of the contract and the death of Jacob Wood, which happened on the 18th day of May, 1842, was not an unreasonable period to allow the plaintiff for collecting the debts due to the firm; and that consequently the plaintiff's cause of action against the deceased for half of the sum in which the firm was indebted to him, did not accrue until the time Jacob Wood died. This gave the plaintiff only two years and thirty-eight days in which to wind up the affairs of a firm whose dealings were quite extended in the credit line; and I think this is a shorter period than it usually takes partners, or their receivers, to close the business that pertains to such firms.

The will of Jacob Wood, deceased, was proved May 23, 1842, and letters of administration on his estate, with his will annexed, were granted on that day to Edward L. Porter and two others as administrators. The plaintiff was prohibited by statute from bringing any suit against the defendants as devisees named in the will of the deceased, in order to charge them with the debt that the deceased owed him, for three years from the time of granting letters of administra-

tion to Porter and others. (2 *R. S.* 109, § 53. 5 *Paige,* 254. 9 *id.* 90.) This period must be deducted from the time the plaintiff had, in which to bring suit, after his cause of action accrued. (*Vanwezel* v. *Wyckoff*, 3 *Sand. Ch. R.* 528.) The statute did not run against the plaintiff during these three years: therefore his cause of action against the defendants did not accrue until the 24th day of May, 1845; and this action was commenced on the 16th day of April, 1853, which date was within the ten years next after the time the plaintiff first had the right to sue the defendants. The statute of limitations, therefore, was no defense to the action.

The complaint specified with reasonable certainty the real estate devised to the defendants; and this is a sufficient description of it according to section 44 of the statute on the subject, (2 *R. S., p.* 454,) which section is made applicable to actions against devisees, by section 60 of the same statutes. (2 *R. S.* 456.) Sections 32, 56 and 59 of those statutes, are as follows, to wit:

§ 32. "The heirs of every person who shall have died intestate, and the heirs and devisees of any person who shall have died after the making of his last will and testament, shall respectively be liable for the debts of such person, arising by simple contract or by specialty, *to the extent of the estate, interest and right,* in the real estate which shall have descended to them, from, or been devised to them by, such person." (2 *R. S.* 452.)

§ 56. "Devisees made liable by the foregoing provisions, to the creditors of their testator, shall not be so liable, unless it shall appear that his personal assets, and the real estate of the testator descended to his heirs, were insufficient to discharge such debt; or unless it shall appear that after due proceedings before the proper surrogate, and at law, the creditor has been unable to recover such debt, or some part thereof, from the personal representatives of the testator, or from his next of kin, or legatees, or from his heirs." (2 *R. S.* 455.)

§ 59. "It shall be incumbent on the creditor seeking to charge any devisees, to show, on the trial, the facts and circumstances herein required to render them liable." (2 *R. S.* 456.)

If sections 33 and 36 of of the same statutes are made applicable, by the sixtieth section thereof, to actions against devisees, as I think they are, it is unnecessary to quote them herein, for they are substantially like sections 56 and 59 above set forth.

The testator had no real estate that descended to his heirs. He devised all he possessed. The plaintiff clearly established, on the trial, that the testator's personal assets were insufficient to discharge the debt on which this action is based; and that they were exhausted in paying the testator's debts, by due proceedings before the surrogate of Tompkins county, and that the plaintiff's debt was left unpaid. The plaintiff could not have sustained any action at law against the legatee named in the will, for the reason that such legatee did not receive the note bequeathed to him by the testator. The presumption is, from the facts proved, that the administrators kept the note and collected it, if it was collectible, and paid the avails of it to the creditors of the testator.

None of the testator's next of kin or heirs received any personal property which he owned at the time of his death. The administrators did not dispute the plaintiff's claim against the deceased, but paid as much of it as they could with the assets they received; therefore there was no chance for the plaintiff to prosecute them, and no remedy was left to the plaintiff to collect his debt out of the estate of the testator, except to institute this action. And I am of the opinion his proof on the trial fully came up to the requirements of the statutes above mentioned, and that he was entitled to the judgment which he recovered.

The defendants did not set up in their answer, or offer to prove on the trial, that the testator owed any other debts than

the one to the plaintiff, as they might have done; (*see* 2 *R. S.* 453, § 39;) and it could not be presumed that he owed other debts, which remained unsatisfied. If there was any defect of parties to the action the defendants waived the same by not taking an objection and pointing out the defect, either by demurrer or answer. (*Code* § 144, § 147, § 148. 2 *Kernan,* 584. 3 *id.* 336. *Churchill* v. *Trapp,* 3 *Abbott,* 306.)

There is palpable equity in applying the real estate described in the complaint to the payment of the plaintiff's debt, for the reason that by the terms of the will of the deceased, the debt is impliedly charged upon such real estate. The defendants were to have such real estate *after the payment of the testator's debts.* (*See Lupton* v. *Lupton,* 2 *John. Ch. R.* 614; 7 *id.* 116; 1 *Comst.* 120, 298; 1 *Paige,* 188; 9 *How. Pr. R.* 214; 2 *Comst.* 500; 6 *Cowen.* 333; 5 *Barb.* 312, 398; 11 *Paige,* 49.)

The plaintiff was entitled to interest on the moneys he advanced individually in paying the debts of the firm; and when it was agreed between the plaintiff and the deceased that the former should, "at the proper costs and charges of the two, take charge of and proceed to collect all the debts due to the said firm," the deceased became liable to pay the plaintiff one half the value of his services, which he should necessarily render in collecting such debts; and for this reason I think the referee did right in allowing the plaintiff commissions on the moneys collected by him for the firm. The plaintiff rendered these services after the firm was dissolved, and while the deceased was doing nothing for its benefit; and I infer from this, as well as from the language of the agreement between the partners, that it was understood by both of them that the plaintiff was to be paid for all services necessarily rendered by him in collecting the debts due to the firm.

And I am of the opinion the judgment in the action should be affirmed with costs; but the course which the cause has taken, has been such, that the defendants should not be made

personally liable for such costs.    They must therefore be made only out of the land described in the complaint.

MASON, J., concurred in affirming the judgment.    GRAY, J., dissented.

Judgment affirmed with costs, to be collected only out of the real estate described in the complaint.

