63  335
73  432
63h 335|
50ad365

63h    335
38 Mis³504

SARAH E. MORTIMER, RESPONDENT, *v.* MARY ANN CHAMBERS AND OTHERS, APPELLANTS.

*Action to charge devisees with a debt of their testator — comparison of handwriting — transactions with a deceased person — a non-negotiable note imports a consideration — ten years' limitation — one defendant cannot set up a counter-claim existing in his favor.*

In an action brought by the holder of certain notes, alleged to have been made by Louisa F. Fardon, to charge the defendants, her devisees, with their payment to the extent of their estate in her real property, which was effectually devised to such devisees by her, the plaintiff sought to prove the signature of the maker of the notes by comparison with her signature upon a certain bond.

*Held,* that such practice was proper.

That section 2 of chapter 36 of the Laws of 1880 was not repealed by chapter 555 of the Laws of 1888.

That where an act is amended "so as to read as follows," the earlier act is not deemed to have been repealed by the latter one.

That testimony by the holder of notes that they had been in her possession prior to the date of the maker's death, and were in the holder's possession at the time of such death, is evidence of the delivery of the notes, and is not incompetent under section 829 of the Code of Civil Procedure, as being testimony relative to a personal transaction with the deceased maker.

That a non-negotiable note imports a consideration as against a devisee, and its production makes a *prima facie* case against him.

*Carnright* v. *Gray* (57 Hun, 518) followed.

That an action to charge a devisee with the debts of a testatrix, to the extent of the property devised, is one which falls within section 388 of the Code of Civil Procedure, directing that an action referred to therein be commenced within ten years after the cause of action accrues.

That such an action is an equitable action, and one *in rem*, and is not an action for the recovery of money only, nor for the recovery of specific real property.

That such an action to charge devisees must be brought, under section 1846 of the Code of Civil Procedure, against all the devisees jointly, and, therefore, a single defendant cannot interpose a counter-claim existing in her favor alone.

*Semble*, that, in such an action, a counter-claim, arising out of a transaction between the plaintiff and one defendant, does not present one of the cases of a counter-claim contemplated by section 501 of the Code of Civil Procedure.

APPEAL by the defendants, Mary Ann Chambers, William F. Chambers and William F. Fardon, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 27th day of August, 1891, after a trial at the New York Special Term, decreeing that certain real property formerly of Louisa Fardon, deceased, was devised, subject to the payment of a debt due the plaintiff, directing its sale and the payment to plaintiff of the amount of the debt, and apportioning such payment among the devisees according to their interests in such real property.

*C. Fine*, for the appellants.

*W. J. Underwood*, for the respondent.

ANDREWS, J.:

This action is brought, under sections 1843 to 1850 of the Code of Civil Procedure, against the defendants, who are devisees under the will of one Louisa F. Fardon, for the purpose of charging upon real estate devised to them certain alleged debts of the testatrix.

The complaint alleges the making by said testatrix of three certain promissory notes; that the plaintiff is the owner and holder of said notes; that on or about December twenty-fifth said testatrix died leaving a will, of which a copy is attached to the complaint. The complaint also alleges, in substance, that the testatrix by said will gave the defendant Mary Ann Chambers a life estate in all of her property, real and personal, with remainder to her husband, the defendant William F. Chambers, subject to the payment of an annuity of $150 to the defendant William F. Fardon, a son of the testatrix, and a lunatic. It is also alleged in the complaint that the assets of the testatrix were not sufficient to pay the plaintiff's debt in addition to the expenses of administration and debts of a prior class; also, that the real property of the testatrix which descended to her heirs was not sufficient to pay the plaintiff's debt, and that the plaintiff could not collect her debt by an action against the heirs; that the value of the real estate devised to the defendants was $16,500, and that the same had not been aliened by them at the time when the action was brought. No personal judgment against the defendants is asked, but the relief prayed for is, that such real estate shall be sold, and the plaintiff's debt, with costs and disbursements, shall be paid out of the proceeds of such sale.

The defendants interposed answers, which set up general denials, fraud in obtaining the notes, and the six years' statute of limitations. The answer of the defendant Mary Ann Chambers also contained a counter-claim for $1,040 for board alleged to have been furnished to the plaintiff; to which counter-claim the plaintiff served a reply containing a general denial. Judgment was rendered by the Special Term, in which it was found that the amount due to the plaintiff, together with costs, was $2,001.25. The judgment also appointed a referee to sell the property, and directed that the plaintiff's debt and costs should be paid out of the proceeds, and apportioned among the several defendants according to their interests, to be computed and ascertained upon the principles of the Northampton Tables of Life Annuities; and from such judgment this appeal is taken.

Quite a number of objections to this judgment, and the proceedings upon the trial at Special Term, are raised by the counsel for the appellant. None of them seem to us of sufficient weight to

justify a reversal of the judgment. It is objected that there was no competent or sufficient proof that the three notes upon which the action was brought, or either of them, were or was ever executed, signed or delivered by the testatrix. Upon the trial the plaintiff sought to prove the signature of the testatrix upon the notes by comparing such signatures with the signature which appeared upon a certain bond which was put in evidence.

Counsel for the appellants claims that as the law stood at the time of the trial such comparison could not be allowed, because section 2 of chapter 36 of the Laws of 1880, which first authorized such comparsions to be made, was, in effect, repealed by chapter 555 of the Laws of 1888, and the last named statute contained the following clause : " But nothing within contained shall affect or apply to any action or proceeding heretofore commenced or now pending." We think the learned counsel for the appellant is mistaken in his view as to the law applicable to this matter.

Chapter 555 of the Laws of 1888 is entitled "An act to amend chapter 36 of the Laws of 1880, entitled An act to amend the laws of evidence and practice on civil and criminal trials," and the first section thereof is as follows : " Section 2 of chapter 36 of the Laws of 1880, entitled An act to amend the law of evidence and practice on civil and criminal trials," is hereby amended so as to read as follows :

The second section contains said section 2, as originally enacted, with some slight amendments.

It has been settled for many years in this State that when the legislature passes an act declaring that a previous act, or some part of the same, shall be amended " so as to read as follows," the earlier act is not deeemed to have been repealed by the later one. This precise point was decided by the Court of Appeals in the case of *Ely* v. *Holton* (15 N. Y., 595), and a part of the syllabus, which states with accuracy the decision of the court, is as follows : " The effect of an amendment of a statute made by enacting that the statute ' is amended so as to read as follows,' and then incorporating the changes or additions with so much of the former statute as is retained, is not that the portions of the amended statute which are merely copied without change are to be considered as having been repealed and again re-enacted, nor that the new pro-

visions or the changed portions should be deemed to have been the law at any time prior to the passage of the amended act. The part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become law only at and subsequent to the passage of the amendment." In the case at bar, therefore, the provision of the act of 1880, which authorized the comparison of signatures, and which was re-enacted by the statute of 1888, was in force at the time of the trial; and the clause in the act of 1888 which declared that nothing therein contained should affect or apply to any action theretofore commenced or then pending, was a mere saving clause, which prevented the amendments made by the act of 1888 from affecting or applying to any action previously brought. The evidence objected to was, therefore, properly admitted, and the objection is not well taken.

It is further objected that such evidence did not establish a sufficient standard with which to compare the signatures of the notes in question. Upon the trial a witness called by the plaintiff's counsel produced a bond and mortgage. The bond only appears to have been put in evidence. The witness who produced these papers testified that he was an attorney in this State, and, as the attorney of Mrs. S. E. Morgan, he held a bond and mortgage given by Louisa F. Fardon to the Home Insurance Company, which were the ones produced by him in court; that he had the papers first about two years ago, and that they were still outstanding liens on the real property *described in the complaint in this action*, and that the witness had gone to the insurance company with an assignment of the same. Mr. Coman, also called for the plaintiff, testified that he was an attorney and was the subscribing witness to the bond, and that the name of the subscribing witness there was his own name and in his handwriting; that he saw that paper executed by Mrs. Louisa F. Fardon. He also testified as follows: " I saw her sign it. I know her. · I searched the title and had to do with the getting of this bond and mortgage from Mrs. Fardon to the Home Insurance Company. I had charge of it. * * * I connect Mrs. Fardon with some Rockland county transaction, in addition to this, but I cannot be more specific. * * * I have no doubt that Louisa F. Fardon, who is the mortgagor in this instance, signed

that in my presence." It also appeared by the testimony that the plaintiff was the sister, and that the defendant Mary Ann Chambers was the daughter of the testatrix; also, that the plaintiff had at one time lived with the testatrix, and at another time with said daughter; and that the testatrix, with her husband, *had at one time lived upon the premises described in the complaint.* We think that the evidence was sufficient to prove that Louisa F. Fardon, the testatrix, was the same Louisa F. Fardon who signed the bond, and that the signature to the bond was the signature of the testatrix; and this established a sufficient basis for a comparison of the signature upon the bond with the signature upon the notes. Mr. Ames, an expert in handwriting, was called as a witness for the plaintiff, and testified, in substance, that the signature of Louisa F. Fardon upon the notes was written by the same person who wrote the signature Louisa F. Fardon upon the bond. No contradictory evidence was offered by defendant's counsel, although the defendant, Mary Ann Chambers, was called as a witness, and, as she appears by her evidence to have been an intelligent person, it may be fairly presumed that she was familiar with her own mother's signature; and it is, therefore, somewhat significant that no attempt was made to prove by her that the signatures upon the notes were not the genuine signatures of her mother. Moreover, another significant fact is that when the plaintiff, the sister of the testatrix, was on the stand, she was asked this question: "In whose handwriting is the signature, and in whose handwriting is the body of each of these three promissory notes which have been shown you?" This question was objected to by the defendant's counsel, and the objection was sustained. We think that the making of the notes was sustained by the evidence.

It is also insisted by the counsel for the defendants that there was no evidence that the notes in question, or any of them, were or was ever delivered to the plaintiff, or that the testatrix ever negotiated or knowingly parted with the said notes.

The plaintiff, against the objection of defendants' counsel, testified upon the trial that the notes in suit had been in her possession prior to the month of December, 1880, when Mrs. Fardon died, and were in her possession at the time of such death.

It is claimed that this was testimony in relation to a personal transaction with the deceased, and that under section 829 of the

Code it was not competent. We do not think this objection is well taken. In *Simmons* v. *Havens* (101 N. Y., 433) it was said : " Exception was also taken to the plaintiff being allowed to testify that she had the deed in her possession ; and that the 'signature was in the handwriting of her mother ; she was not asked, and did not state, from whom she received the deed ; and her testimony as to the handwriting or the contents of the deed did not involve a personal transaction between her and her mother.' The plaintiff might have received the deed from some third person." Counsel for the defendants, in his brief, points out some particulars wherein the case of *Simmons* v. *Havens* differs from the case at bar. But the portion of the opinion above quoted is clear and explicit, and whatever differences between the cases may exist, we think that the decision in that case applies to and controls the case at bar. (See, also, *Taber* v. *Willets*, 44 Hun, 346 ; *Greer* v. *Greer*, 20 N. Y. Civ. Pro. Rep., 75 ; *Wing* v. *Bliss*, 8 N. Y. Supp., 500.)

The evidence was competent and proved the delivery of the notes by the testatrix to the plaintiff before the death of the former.

It is also objected that there was no proof of any consideration for said notes, or any of them, or that they represented a debt of the testatrix. Counsel concedes that the production of the notes might have made a *prima facie* case against the maker, but claims that the production did not have such effect as against a legatee or devisee, and he cites in support of this proposition section 1843 of the Code of Civil Procedure, *Gere* v. *Clark* (6 Hill, 350–352) and *Mersereau* v. *Ryerss* (3 N. Y., 261–263).

We have examined the statute and the authorities cited, but find nothing in them which sustains the view contended for. And in *Carnright* v. *Gray* (57 Hun, 518) it was held that a non-negotiable note imported a consideration as against the executors of the deceased maker as well as the maker himself. If the question were a new one, we should be inclined to adopt the views expressed by LEARNED, J., in the very able and exhaustive dissenting opinion which he wrote in that case, and hold that a non-negotiable note does not import a consideration against anybody. But that case itself holds to the contrary, and there is other authority to the same effect. If such a note imports a consideration as against the maker thereof and his executors, we see no reason why it should not also

import a consideration against the devisee, who, for the purposes of the action, stands in the place of the deceased maker of the note.

It is also objected that the statute of limitations had fully run as to all the notes in suit, at least as to the defendant William F. Fardon. The answer sets up the six years' statute of limitations. The summons was served on the defendant Mary Ann Chambers on October 27, 1886. The defendant William H. Chambers was not served, but appeared in the action on November 13, 1886; William F. Fardon was not originally made a party, but on August 8, 1889, a supplemental summons and complaint were served, which brought him in as a party. The notes sued on are dated, respectively, May 1, 1879, May 1, 1880, and July 15, 1880. The defendant Mary Ann Chambers was executrix of the testatrix's will, and received her letters testamentary in February, 1881. Under section 1844 of the Code this action could not be maintained except three years had elapsed since such letters had been granted, and, under the provisions of section 406 of the Code, such three years is not a part of the time limited for the commencement of the action. The defendants' counsel concedes, and it would seem to be clearly the law, that the statute did not bar the action, under the circumstances of the case, until after the expiration of nine years from the date of the notes; and as the action was commenced against Mary A. and William F. Chambers in 1886, it is clear that, so far as they are concerned, the statute of limitations had not run. It appears, however, that the defendant Fardon was not served until August 8, 1889, and if the nine years' limitation applies to this case, the debt had outlawed as to him, at the time said Fardon was served. To meet this difficulty the counsel for the plaintiff claims that the nine years' limitation does not apply, but that the case falls within the provisions of section 388 of the Code, which provides that any action, the limitation of which is not otherwise specifically prescribed in the Code, must be commenced within ten years after the cause of action accrues.

The question presented is not free from doubt, but the claim made by the plaintiff's counsel in this regard is sustained by authority. Precisely the same question was presented in *Wood* v. *Wood* (26 Barb., 356) which was an action like the case at bar, and in which the same relief was sought. BALCOM, J., who delivered the

opinion of the court, said : " The basis of the action is a debt which Jacob Wood, deceased, owed the plaintiff, but that is not the gist of it. It is not an action for the recovery of money only, although the ultimate object of it is to obtain money. Nor is it one for the recovery of specific real property, for the plaintiffs cannot have the land described in the complaint as the fruits of the litigation ; but it is an equitable action to reach certain real estate which Jacob Wood, deceased, devised to the defendants, and to authorize its sale for the purpose of satisfying a debt that the deceased owed the plaintiff. It is strictly an action *in rem.* for no facts are set out in the complaint, and none were established on the trial, to support a claim against the defendants personally. It was not a case for a jury, but the issues in it were triable by the court (citing authorities). In other words, it is an action for equitable relief of which the Supreme Court had not jurisdiction prior to the enactment of the Code " (citing authorities). " It could, therefore, be commenced at any time within ten years after the cause of action accrued, either by the Revised Statutes or under the Code." What is said by the learned judge about the nature of the action in that case applies to the case at bar. The complaint does not ask for a personal judgment against the defendants, and the only relief prayed for is that the property described in the complaint shall be sold and the debt of the plaintiff paid out of the proceeds. The decision in that case was based upon the provisions of the former Code. But there is no difference between the provisions of that Code and the Code of Civil Procedure which would call for a different decision in the case at bar. While it must be admitted that the question is not free from doubt, we think that as it has been squarely decided, after argument, by another General Term of this court, we ought to follow such decision. The objection, therefore, that the action was not brought in time, as to the defendant Fardon, must be overruled.

It is also objected that the want of assets was not properly proved. We do not think this objection was well taken, for it was clearly established by the evidence that the personal property amounted to very little, and that what little there was, was expended in the payment of physicians' bills, funeral expenses and other debts.

It is also claimed that the court erred in excluding evidence as to the counter-claim set up in the answer of the defendant Mrs. Cham-

# 344     MORTIMER v. CHAMBERS.

bers. We think, however, that the evidence was properly excluded. Under the provisions of section 1846 of the Code of Civil Procedure an action of this description must be brought jointly against all the devisees. There can be but one judgment in the action, and the provisions of section 1847, providing for the apportionment of damages and costs, does not render the action one against the devisees severally so as to enable a single defendant to interpose a counter-claim.

There can be no separate judgment between the plaintiff and the defendant Mary A. Chambers; and no recovery at all can be had against her individually. When the liability of the defendants is joint, and not joint and several, and a joint judgment only can be recovered, a counter-claim in favor of one of the defendants only cannot be allowed. (*St. Michael's Church* v. *Behrens*, 1 N. Y. St. Rep., 627; 10 Civ. Pro. R., 181; *Vanderbilt* v. *Baldwin*, 15 Abb. N. C., 312.) The plaintiff did not waive the objection that the counter-claim was not allowable by replying to it. (*Smith* v. *Hall*, 67 N. Y., 48; *Carpenter* v. *Manhattan Life*, 93 id., 552; *Kiersted* v. *West*, 13 W. D., 106.) Moreover, as the action is an equitable one, to charge a debt upon the real estate, by virtue of the provisions of the statute, and the counter-claim was on an alleged contract between the plaintiff and the defendant Mrs. Chambers, it does not seem to be one of the cases provided for in section 501 of the Code.

The judgment should be affirmed, with costs.

Van Brunt, P. J., and Barrett, J., concurred in the result.

Judgment affirmed, with costs.