vember 14, 1897, he entered the back room of a café on Allen street, this city, and accosted one Moses Abramsky, and, after arousing him from a sleep, took from his pocket a gold watch, chain, and locket, which, on demand, he refused to deliver. By the return to the writ it appears that at the termination of the trial or hearing the relator's record was considered by the commissioners, in addition to the testimony on the trial, and the relator was found guilty.

We have had frequent occasion to state the rule that, although the record of an officer on trial may be introduced in evidence and considered upon the question of his punishment, it is not to be considered upon the question of his guilt, and that it is violative of the rights of the person tried to take up such record after the proceedings have closed, without introducing it in evidence,—as was done in this instance,—and consider it upon the question of guilt. As said in the headnote which correctly summarizes the opinion in People v. Roosevelt, 1 App. Div. 577 (s. c. 37 N. Y. Supp. 488):

"The dismissal of a member of the police force of the city of New York is not justified where it appears that the police commissioners, in reaching a determination, considered, not only the testimony in the case, but also the record of the member, which was not introduced in evidence upon the trial, and as to which the accused had no opportunity for explanation. If the record of the member is to be treated as the knowledge of the commissioners, it is still improper, as they have no right, in discharging a member, to act upon their own knowledge, or to supplement the evidence by such knowledge."

In People v. Wurster, 91 Hun, 234, 36 N. Y. Supp. 161, it was said by the court:

"The respondent has annexed to his return the record of the relator as a member of the fire department, * * * but it was not given in evidence upon the trial, and the relator was offered no opportunity to explain it. It will not, therefore, be considered on this hearing, except as it has a tendency to show that matters other than the charges against the relator above referred to, and the proceedings on his trial, were permitted to influence the respondent in forming his judgment."

It here appears by the return to the writ that at the termination of the trial, without the record having been introduced in evidence, it was considered by the commissioners upon the question of the relator's guilt. For the error thus committed, there should be a new trial before the commissioners.

The proceedings should be annulled, and a new trial ordered, without costs. All concur.

---

(50 App. Div. 361.)

## DE CRANO v. MOORE.

(Supreme Court, Appellate Division, First Department. April 20, 1900.)

1. PRINCIPAL AND AGENT—EVIDENCE OF AGENCY—PROOF—COMPETENCY—CONCLUSIVE EVIDENCE.

In the absence of impeaching or contradictory evidence, an account in the handwriting of the agent, showing the amount of a balance due on a certain date, and a letter of the agent acknowledging the indebtedness, referring to such account as correct, stating that the money was earning certain interest, that it would take time to relieve it from investment, that the real estate was necessarily in his name, that he could probably pay the same by the end of the year, and that in case of death his estate was

sufficient to pay the same, were competent, and conclusive of the indebtedness and the trust relation existing between the parties.

2. WILLS—DEVISEES—PRINCIPAL AND AGENT—PERSONAL CAPACITY—REPRESENTATIVE CAPACITY—SIMPLE CONTRACT—SPECIALTY—FIDUCIARY RELATION.

An action against a sole devisee for an indebtedness of a fixed amount arising out of moneys held and invested by the testator as agent is an action on contract, and can be maintained under Code Civ. Proc. § 1843, which provides that a devisee of a testator is liable for debts of the decedent arising by simple contract or by specialty to the extent of the estate, interest, and right in the real property which was devised to him, since the terms "simple contract" and "specialty" comprehend every kind of contractual obligations, and the existence of a fiduciary or confidential relation does not alter the nature of the obligation.

3. WILLS—EXECUTORS AND ADMINISTRATORS—ACTIONS—DEVISEES — DEBT OF TESTATOR—EXHAUSTION OF REMEDY—SECONDARY REMEDY.

Where the sole administratrix of an estate is also the sole devisee of testator's real estate, an action may be brought against her in an individual capacity to recover on a debt of the testator, without showing that the personal estate of decedent has been exhausted, since Code Civ. Proc. § 1860, provides for recovery against a person who is administrator and also devisee, and would be liable in one capacity after exhaustion of the remedy against him in the other, though such other remedy has not been exhausted.

4. LIMITATION OF ACTIONS—EXECUTORS AND ADMINISTRATORS—PRINCIPAL AND AGENT—AGENT'S DEATH.

Where a letter sent on April 25, 1890, by an agent, who died in 1895, acknowledged his indebtedness, and inclosed an account thereof, and action on such indebtedness was instituted against the administratrix and devisee of such agent April 24, 1899, such action was not barred by the statute of limitations of six years, since, under Code Civ. Proc. § 1844, three additional years are allowed in which to bring action where testator died prior to the running of the statute.

5. INTEREST—PRINCIPAL AND AGENT—RECOVERY—PRESUMPTION.

Where suit is brought by a principal against an agent's administratrix and devisee to recover money invested by such agent at a certain rate of interest, and it is not shown that such rate was ever changed, a recovery may be had of the original sum, with interest at such rate until the institution of suit, as it will be presumed that the money continued to earn the same interest.

6. INTEREST—PRINCIPAL AND AGENT—DEMAND—LEGAL RATE.

Institution of suit to recover of an agent's administratrix and devisee money invested by such agent constituted a demand for its payment, or the property in which it was invested, and a refusal to comply with such demand entitled the principal to recover legal interest subsequent to the demand, notwithstanding such money was earning a less rate of interest prior thereto.

Appeal from special term, New York county.

Action by Mary A. De Crano against Marie Louise Moore individually and as administratrix of the estate of Gideon E. Moore, deceased. From a judgment of the special term of the supreme court (63 N. Y. Supp. 585) in favor of plaintiff, both parties appeal. Modified.

The plaintiff is the sister of Gideon E. Moore, deceased, to whom she claims to have intrusted certain moneys which were invested for her by him, and which she now seeks to recover by this suit in equity, brought against the defendant, his widow, individually and as administratrix of his will. It is stated in the complaint that prior to his death on the 13th day of April, 1895, the plaintiff had permitted her brother to have in his possession and control upwards of $8,000 of her money for the purpose of caring for and investing the same, which he held in a fiduciary capacity; that his will —which is an-

nexed to the complaint, and which makes no mention of the plaintiff or the moneys owing to her —was duly admitted to probate on the 24th day of June, 1895, and letters of administration with the will annexed were issued on or about the 4th of September, 1895, to the defendant, who is the sole devisee and legatee; that the said Gideon E. Moore left no personal property of any amount, and only the equity in two certain pieces of real property to which at the time of his death he held title, and the plaintiff is unable to collect her debt by proceedings in the surrogate's court, or by action against the heirs or next of kin, and there are no assets to satisfy her claim except the equity in the real property, the value of which is about $30,000; that two actions have been brought against the defendant herein individually and as administratrix by the mother and brother of Gideon E. Moore for an accounting and determination of their interests in the real property mentioned, resulting, as alleged, from the use of money belonging to them, controlled and invested by Gideon E. Moore during his lifetime, and the sum so claimed, together with the claim of the plaintiff herein, amounts to more than the value of the property of which the defendant is now possessed individually as devisee or as administratrix; that the defendant has not aliened the property devised to her, but is now enjoying the rents and profits therefrom, and that she has filed no inventory as administratrix, and published no notice for creditors. An accounting is therefore asked for between the plaintiff and the defendant in her dual capacity, the appointment of a receiver, and an execution against the real property mentioned for the collection of the debt. Besides a general denial of the plaintiff's claim, the answer sets up the statute of limitations as a bar to proceedings, legal or equitable, to enforce the claim; and further alleges that the plaintiff has an adequate remedy at law. No testimony was offered by the defendant, and the decision at special term therefore rests upon that introduced by the plaintiff. Upon the opening the defendant moved to dismiss the complaint "on the ground that it appears that this is an action brought to establish or to collect a debt out of property devised to the defendant," and, as to the administratrix, the complaint states no cause of action; that under the Code the only sort of debt which could be thus maintained is a simple contract or specialty, whereas it here appears that what is claimed are trust funds, so that the provision of the Code as to actions against a devisee does not lie. In reply, the plaintiff's counsel stated: "We do not charge any breach of trust, and we do not attempt to follow trust fund into any particular property." The motion was denied, and exception taken. Eliza L. Moore, the mother of Gideon E. Moore, who resides in Dresden, Germany, and whose testimony was taken on a commission, stated that she identified a letter dated April 25, 1890, admitted in evidence, and marked "Exhibit B," as received by her in the regular course of mail, and stated that the words "Mary" and "Harry" therein related to this plaintiff and her brother. She also identified another paper admitted in evidence and marked "Exhibit A," dated April 21, 1890, as showing an account referred to in the letter dated April 25, 1890, and received by her at the same time. Her further testimony was that the plaintiff had left to her the correspondence as to the property, and, to her knowledge, her son made no remittances, from time to time, to the plaintiff, of any sums representing the income from it, and he was not subject to supervision in his dealings. It was admitted on the record that this action was begun on the 24th day of April, 1899. Exhibit A is an itemized account of the debits and credits of moneys of the plaintiff handled by Gideon E. Moore, showing a balance of $8,640.45. The letter Exhibit B describes in detail the various monetary transactions, part of which belonged to plaintiff, and states: "It is earning 5 per cent. now." "The real estate is necessarily in my name," and, "in case of my death, my will provides that, after payment of all my just debts, the residue of my real and personal estate shall go to my wife as sole legatee. Her 'right of dower' is a life interest in one-third of the real estate which I hold over and above the amount of the mortgages. Now, I own more than one-third of all the real estate standing in my name, being my own money over and above all that I owe you, Mary, and Harry. In case of my death, therefore there is enough to pay Louise's right of dower, repay you all, and still leave a surplus. * * * As for evidence of my indebtedness to you all, my regular accounts

current are as binding a claim against my estate as notes of hand, or any other form of security." The defendant, called for plaintiff, testified that after the death of her husband, Dr. Moore, she received everything in his laboratory, which she rents, together with the room itself, for $1,000; that her husband left other valuable securities, including mining stocks and patents. H. C. Davis, a public accountant, testified that in April, 1898, he examined the accounts of Dr. Moore, and found that he had not kept a separate account for the plaintiff, and that he prepared a statement from various sources. The plaintiff's counsel then said: "We are willing to rest on the account furnished by Dr. Gideon Moore, marked as 'Exhibit A.'" Motion was made to dismiss the complaint, and was again denied. The special term decided that the plaintiff was entitled to recover $8,640.45, with interest at the rate of 5 per cent. from March 31, 1890, together with costs, and an additional allowance. Exceptions were duly taken to the decision, and from the judgment thereon entered to be collected out of the assets in the hands of the defendant as administratrix, and out of the real property devised to her, both parties appeal; the plaintiff asking for interest at the rate of 6 per cent., instead of 5 per cent., and the defendant from the entire judgment.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Charles P. Howland, for plaintiff.
John P. Dunn, for defendant.

O'BRIEN, J.  We think that little need be added to the opinion of the learned judge at special term, in which all the points again urged, except the statute of limitations, were expressly considered, and correctly determined. Upon the question of the indebtedness and the relation of the parties, the account and letter sent by defendant's testator were competent and conclusive, in the absence of any evidence to impeach or contradict them. The fact that there was a fiduciary or confidential relation between the parties does not alter the nature of the obligation, which was on contract; and, whether we consider the right of plaintiff to be based on contract express or implied, its enforcement is regulated by section 1843 of the Code of Civil Procedure. As correctly urged by the plaintiff, the terms "simple contract" and "specialty," as used in the section, comprise every kind of contractual obligation. The section provides:

"The heirs of an intestate and the heirs and devisees of a testator, are respectively liable for the debts of the decedent arising by simple contract or by specialty, to the extent of the estate, interest and right in the real property which descended to them from or was effectually devised to them by the decedent."

By virtue of this section, the action against the defendant, as sole devisee, for an indebtedness of a fixed amount arising out of a contractual relation, can be maintained. In Wilkes v. Harper, 1 N. Y. 586, wherein a testator, during his lifetime, received moneys in trust, and invested them in his own name, it was said that the devisees were liable in their respective proportions in an action brought to recover the same. The plaintiff was not required to prove that there was no personal property of the decedent sufficient to satisfy her debt; and, aside from the question of the sufficiency of the answer as raising such an issue, proof or allegations as to the nonexistence of the assets is unnecessary where the administratrix, as here, is also

the sole devisee. Section 1860 of the Code of Civil Procedure provides:

"Where a person who takes real property of a decedent by devise and also by descent; or who takes personal property as next of kin and also as legatee; or who takes both real and personal property in either capacity; or who is executor or administrator, and also takes in either of the before mentioned capacities; would be liable on one capacity, for a demand against the decedent, after the exhaustion of the remedy against him in another capacity; the plaintiff in any action to charge him which can be maintained, without joining with him any other person, except a person whose liability is in all respects the same, may recover any sum for which he is liable, although the remedy against him in another capacity was not exhausted. * * *"

With regard to the statute of limitations, if the 10-year rule applies, it had not run, for plaintiff's account was sent on April 25, 1890, and the action was begun April 24, 1899, a period of less than 10 years; and, if the 6-year statute of limitations applies, then, by section 1844 of the Code, in an action of this character, where the death of the testator occurs before the running of the statute, 3 years additional are allowed, making 9 years in all; and, as the action was commenced within 9 years, that statute is not a bar. Indeed, it may be doubtful whether the statute of limitations had commenced to run at all. The transaction was either a deposit of money to be paid upon demand, or it was a deposit of money to be held and invested by the depositary as trustee. If the transaction was of the character first mentioned, the statute could only be set running by a demand; and, if it was of the latter character, the statute would only commence to run after it had been ascertained that the depositary had converted the money to his own use.

Upon the question of interest, the plaintiff insists that from the death of Dr. Moore she should have interest at 6 per cent., on the ground that, as an indebtedness existed which the administratrix should have paid, but did not even recognize as a debt of the estate, the law fixes the interest (Barker v. White, 58 N. Y. 204, 214); and that, in any event, interest at 6 per cent. should be allowed from April 24, 1899, the date on which the action was brought. On this subject the judge at special term said:

"In the letter of April 25, 1890, read in evidence by the plaintiff, it appears that the money was then earning interest at the rate of five per cent. per annum. It does not appear whether or not the decedent or this defendant ever changed the investment, and, in the absence of proof upon the subject, it may be presumed that the money has continued to earn that rate of interest. There may be circumstances which would justify charging the defendant with the full legal rate of interest from the date of the decedent's death, but those circumstances do not now appear, and could only be ascertained upon an accounting. I understand that the parties do not desire to assume the expense that such an accounting would involve."

Although we approve of this reasoning, we do not think it applies to the period subsequent to the commencement of this action. That constituted a demand and an election by the plaintiff to receive back her money or the property, if any, in which it had been invested. The refusal to comply with the demand entitled plaintiff to sue for and recover the amount which her brother owed her, with legal interest.

The judgment should be modified by giving the plaintiff interest at 6 per cent. from April 24, 1899, and, as so modified, affirmed, with costs to the plaintiff. All concur.