(38 Misc. Rep. 500.)

RICHARDS v. LOW, Mayor, et al. BAKER v. SAME. DOUGHERTY v.
SAME. HOME FOR INCURABLES v. SAME. FERGUSON et al.
v. SAME. ANDREWS v. SAME.

(Supreme Court, Special Term, New York County. July, 1902.)

1. BOARD OF ESTIMATE AND APPORTIONMENT—REVISING APPORTIONMENTS.

Charter of Greater New York, § 980, provides that the board of public improvements may determine what proportion of the cost shall be paid by the city of New York, the remainder to be assessed on the property benefited. This section was amended so as to provide that the determination of the board as to the proportion of costs to be borne by the city after it shall be made and announced shall be final, and shall not be reopened by said board. Section 243 provides that said board should exercise such powers as were theretofore vested in the board of street openings and improvements of the corporation. Laws 1901, c. 466, abolished such board, and such powers were transferred to the board of estimate and apportionment. Held, that such board had power to revise and alter, once for all, determinations of its predecessor, the board of public improvements, in relation to apportioning the expense of street openings between property owners made in December, 1901, during the last days of the existence of such board.

2. SAME.

Though the board of estimate and apportionment has the power to revise the acts of its predecessor, the board of public improvements, it cannot revise or reverse a determination of its own after the same has been made and announced.

Actions by Joseph Richards, John O. Baker, William A. C. Dougherty, the Home for Incurables, Robert H. M. Ferguson and another, and Catharine M. Andrews against Seth Low, as mayor, and others. Motions to continue preliminary injunctions. Denied.

Joseph A. Flannery, John C. Shaw, and John H. Judge, for the motions.

George L. Rives, Corp. Counsel (George L. Sterling, of counsel), opposed.

GIEGERICH, J. These seven suits, substantially the same in principle, but relating to different streets, are brought to enjoin the members of the board of estimate and apportionment of the city of

New York from taking any action to revise or alter certain resolutions of the former board of public improvements apportioning between the city and the owners of property deemed to be benefited thereby the expenses of various street-opening proceedings, and in some instances imposing the entire expense upon the city. The power of making such apportionment, under the consolidation act (section 970, Laws 1882, as amended by chapter 660, Laws 1893), was vested in the board of street opening and improvement, which went out of existence on December 31, 1897, and its powers were transferred to the corresponding body called the "board of public improvements," created by section 426 of chapter 378 of the Laws of 1897, which reads as follows:

"The said board of public improvements shall exercise such powers and perform such duties with respect to the whole territory embraced within the city of New York, as constituted by this act, as were heretofore vested in the board of street opening and improvements of the corporation known as the mayor, aldermen and commonalty of the city of New York, with respect to the territory included within that municipality, except so far as the same have been otherwise specifically and expressly conferred by this act. And the said board of public improvements shall exercise such other powers and perform such other duties as are vested in or cast upon it by any of the provisions of this act, or that may in accordance with the law be devolved upon it by the municipal assembly."

It is to be observed that the last sentence of this section refers to other powers and duties vested in the new board, which became a body of broader functions than its predecessor. When the Greater New York charter was revised (Laws 1901, c. 466), the board of public improvements in turn went out of existence, and a portion of its powers, namely, such portion as had come down to it from the board of street opening and improvement, was transferred to the board of estimate and apportionment (Laws 1901, c. 466, § 243). The central and decisive question presented in each of these cases is whether the board of estimate and apportionment can revise the determination made by the board of public improvements respecting the apportionments above mentioned. The question is an important one, and involves large sums. In each of the seven cases a resolution was adopted by the board of public improvements during the last few days of its existence, and on either the 24th, the 26th, or the 30th of December, 1901, amending and repealing corresponding and previous resolutions, whereby the whole of the cost and expense of the several proceedings involved was assessed upon the property deemed to be benefited, so that all, or a portion varying from 40 to 75 per cent., of such cost and expense, was cast upon the city; and the neighboring property entirely, or to the extent indicated, correspondingly relieved of the burden. From a table prepared and presented on behalf of the defendants it appears that the aggregate effect of the several amendments relating to the eight proceedings involved in these suits will be to impose upon the city the payment of upward of $600,000, not to mention the other proceedings in a similar situation before the board of estimate and apportionment, involving about the same amounts, but as to which no suits for injunctions are pending. Whether or not the board of estimate and apportionment, if permitted by the courts to act, will make any changes in the apportionments as thus fixed by the several amend-

ments, and, if so, what changes, cannot be known; but, in order to give the plaintiffs a standing, and to reach the merits of the question, it may be assumed that changes will be made, and to the disadvantage of the plaintiffs. Whether or not the defendants possess this power of revision depends chiefly upon the construction to be given to a few short sections of the charter of Greater New York in its original and in its revised form. Section 980 of the charter as it existed prior to January 1, 1902, provided as follows:

"The board of public improvements may in any case determine whether any, and, if any, what proportion of the cost and expenses thereof shall be borne and paid by the city of New York, and the remainder of such cost and expense shall be assessed upon the property deemed to be benefited thereby."

This section, as amended, so far as applicable to the question involved, now reads as follows:

"The board of estimate and apportionment may in any case determine whether any, and, if any, what proportion of the cost and expense thereof shall be borne and paid by the city of New York, and the remainder of such cost and expense shall be assessed upon the property deemed to be benefited thereby. The determination or decision of said board as to the proportion of cost and expense to be borne and paid by the city of New York, and as to the proportion to be borne by the property benefited, after it shall have been made and announced, shall be final, and such determination or decision shall not be reopened or reconsidered by said board."

Section 243, in its present form, is as follows:

"The said board of estimate and apportionment shall exercise such powers and perform such duties with respect to the whole territory embraced within the city of New York, as constituted by this act, as were heretofore vested in the board of street opening and improvements of the corporation known as the mayor, aldermen and commonalty of the city of New York, with respect to the territory included within that municipality, except so far as the same have been otherwise specifically and expressly conferred by this act. All the maps, records and proceedings of the board of public improvements relating to subjects as to which jurisdiction is conferred by this section upon the board of estimate and apportionment shall be transferred to, kept and maintained in the office of the board of estimate and apportionment. And the board of estimate and apportionment shall exercise such other powers and perform such other duties are [as] are vested in or cast upon it by any of the provisions of this act, or that may in accordance with the law be devolved upon it by the board of aldermen. All acts or proceedings heretofore performed or taken by the board of public improvements of the city of New York in respect to the powers hereby conferred and the duties hereby imposed upon the board of estimate and apportionment shall continue to be valid and of full force and effect unless modified, repealed or abrogated in the manner provided by law."

Elaborate and able briefs are presented on both sides. On behalf of the plaintiffs, whose attorneys unite in a single brief, it is urged with acuteness and earnestness that section 980, in its present form, as above quoted, is either an original grant of power, and consequently prospective in operation, and applicable only to original proceedings initiated by the board of estimate and apportionment, or, on the other hand, if not an original grant, then it is continuing legislation, and must be read as applying to any board exercising the power thereby conferred, in which event the prohibition against "said board" reconsidering any action already taken applies to any board exercising such

powers, and therefore prohibits the re-opening of the resolution in question by the board of estimate and apportionment; or, as the argument is summed up in epigrammatic form, "the grant of power cannot be retroactive, and the qualification thereto be purely prospective in operation." I am unable to agree with the conclusion the plaintiffs' attorneys contend for. It seems to me that the prohibition against reconsideration of action once taken relates exclusively to acts of the new body; that is, acts of the board of estimate and apportionment. To accede to the argument on behalf of the plaintiffs would, in effect, be giving this prohibition a retroactive effect. If it be held that the resolutions of the board of public improvements passed on the 24th, 26th, or 30th days of December, 1901, cannot be reconsidered, such an adjudication makes such resolutions irrevocable. Now, the fact is that such action, when taken, was not irrevocable, but might have been reconsidered by the board of public improvements the same day or the next day, if they had been so disposed. That action, when taken, was not final under the law existing at the time, but the construction contended for on behalf of the plaintiffs would make it final, and thus import to the act a character which it did not possess at the time, or could not possess under the law in existence at the time, but which is sought to be impressed upon it by virtue of a subsequent act. That all legislation is presumed to be prospective in effect (In re Delaware & H. Canal Co., 129 N. Y. 105, 29 N. E. 237; In re Van Kleeck, 121 N. Y. 701, 25 N. E. 50), and that amendatory statutes do not, any more than original statutes, have a retroactive force unless so expressed (Ely v. Holton, 15 N. Y. 595; In re Miller's Estate, 110 N. Y. 217, 18 N. E. 139; Mortimer v. Chambers, 63 Hun, 335, 17 N. Y. Supp. 874), is argued by the plaintiffs' attorneys themselves, who cite the above cases in support of the proposition. It is urged that it would be preposterous to hold that the board of estimate and apportionment can reverse the action of the former board of public improvements, but not its own. I do not think so. The new board is a differently constituted body, and, what is more important, the law now makes its action final, whereas the acts of its predecessor were only tentative and provisional, and were subject at any time to change and correction. Under the latter condition, it is obvious that the same caution and deliberation are not incumbent, and are not to be expected; as where the act is irrevocable. In view, also, of the number and importance of the proceedings passed upon by the old board at its last three meetings, said to be not less than 18, it is fair to assume that the same care and deliberation were not exercised as would have been by a body realizing that its action was final.

The further argument is made that section 243, above quoted, forbids any such interference, as is here threatened, with the acts or proceedings taken or performed by the board of public improvements, and attention is called to the fact that the defendant board is vested by that section, not with the powers theretofore exercised by the board of public improvements, but with those of the board of street opening and improvement, and that the powers of the former were not carried over to the defendant board. It is true that all the powers were not

so transferred, but it is also true that this particular power was, and, consequently, as to it there was no break, and the continuity of its exercise has been preserved, first, in the board of street opening and improvement, next in the board of public improvements, and now in the defendant board. The draftsman of section 243 might have employed a different form of expression, and have provided that the defendant board should exercise such powers and perform such duties as were theretofore vested in the board of public improvements, and had descended to that body from the board of street opening and improvement. The language adopted is a more convenient and concise method of expressing precisely the same meaning. My conclusion is that the board of estimate and apportionment has power to act once for all on any question of the kind here presented, whether such question came down to it from the proceedings instituted prior to January 1, 1902, or arises in the proceedings instituted after that date. This conclusion renders it unnecessary to consider any of the other questions discussed. Motions denied, with $10 costs to the defendant in each of these actions.

Motions denied, with $10 costs to defendant in each action.