## WING *v.* BLISS.

*(Supreme Court, General Term, Fifth Department. December 30, 1889.)*

**1. WITNESS—COMPETENCY—TRANSACTIONS WITH DECEDENT.**

In an action against a devisee to recover plaintiff's share of the profits, according to an agreement between plaintiff and the testator, of certain lands purchased in testator's name, and by him devised to defendant, it is not in violation of Code Civil Proc. N. Y. § 829, which makes a party in interest incompetent to testify to any personal transaction between himself and the decedent, against one claiming under the decedent, for plaintiff to testify that a certain letter was in testator's handwriting; that he found it on his desk; that it was in an envelope directed to him in testator's handwriting.

**2. PARTNERSHIP—SETTLEMENT.**

It being found that testator bought the lands under an agreement that on a resale thereof he and plaintiff should divide the profits or losses, the court should have ordered a sale thereof, and a division of the proceeds according to the interests of the parties, rather than that an accounting should be taken, and the amount found which one party should pay to the other for the land.

Appeal from special term, Erie county.

Action by George Wing against Anna L. Bliss. It was adjudged that the plaintiff and one Seth P. Bliss, deceased, were copartners in purchasing and holding for resale, anticipating profits, two city lots, without buildings thereon, located in the city of Buffalo. The title to the premises was conveyed to Bliss, who advanced all the purchase money; and it is alleged by the plaintiff that there was an agreement entered into between himself and the deceased, before the conveyance was executed, by the terms of which they were to share in the profits and losses. Bliss, by his last will and testament, devised the lands to the defendant, his widow, who retains the title. This action is brought for the purpose of closing out the alleged transaction, and securing to the plaintiff his share of the profits, if any have accrued. Judgment for plaintiff, and defendant appeals.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*William C. Green,* for appellant. *Spencer Clinton,* for respondent.

BARKER, P. J. At the time of the death of Seth P. Bliss, who was the husband of the defendant, the title to the premises situated on the corner of Bork avenue and Hoyt street was vested in him by a deed from Charles J. Ellis dated October 29, 1883. The title of this grantor was not questioned on the trial. By his last will, Bliss devised the premises to the defendant. The plaintiff alleges in his complaint, as his cause of action, that, before Ellis deeded to Bliss, he and Bliss entered into a parol agreement that the plaintiff should make a bargain with Ellis for the purchase of the lots, look after the title, and see to the taxes, and on a resale they should divide the profits equally, if any were realized, and bear equally the losses, if any were sustained. This action is prosecuted to close out the alleged transaction in some proper way, so as to secure to the plaintiff his rights and equities in the joint enterprise.

It is admitted that, in some form, the decedent advanced all the purchase money, and paid all the taxes, and also that the lots remained unsold, and that the defendant is in the possession of the same. It was conceded by the defendant on the argument that a parol agreement between the parties of the nature and character of the one relied upon by the plaintiff is valid, and is not open to the objection that it violates the statute of frauds, and that such a contract may be enforced by a proper action. *Chester* v. *Dickerson,* 54 N. Y. 1; *King* v. *Barnes,* 109 N. Y. 267, 16 N. E. Rep. 332. The evidence produced by the plaintiff in support of the agreement, as claimed by him, is such, in our opinion, as to justify the conclusion of the trial court on the question of fact in dispute. The burden of proof was on the plaintiff, and, as the relation of attorney and client existed between Mr. Wing and the de-

ceased at the time of making the agreement, he was called upon to show that the bargain was perfectly fair; and that, we think, he has done. This is not a case where the attorney's knowledge of and relation to the property commenced in advising his client as to the rights and interests of the latter in the property in question; for, if any fact is established by the evidence, it is that the parties agreed to enter upon the enterprise while the title was in Ellis, who had, through the plaintiff, as his agent, placed the property upon the market. In considering the evidence for the purpose of satisfying our minds as to the terms of the bargain between the plaintiff and the deceased, we have discarded as evidence bearing on this question the declarations and statements made by the plaintiff to the defendant as to the terms of the contract, as they were given in evidence for another purpose, and were incompetent as evidence to prove the alleged agreement. The plaintiff was sworn as a witness in his own behalf; and without his evidence the proof in support of his case would have been so scant, and the nature of his arrangement so uncertain, that the complaint would probably have been dismissed for want of proof.

It is claimed by the defendant that the plaintiff was permitted to testify, over her objection and exception, as to a personal transaction and conversation between himself and the decedent in violation of the provisions of section 829 of the Code of Civil Procedure. As the defendant claims title under her late husband, she was in a position to demand a strict observance of the provisions of the rule therein described. The plaintiff offered and read in evidence a letter purporting to be written by Mr. Bliss, and addressed to the plaintiff, which contained a statement which, when read in connection with the other evidence, tended to prove that the decedent and the plaintiff were both interested in the lot. The only sentence in the letter having any signification or bearing on the question in dispute is as follows: "*G. Wing:* Please pay my taxes on my house, 31 North street, and on our lot, and get receipts to-day or to-morrow. Yours, S. BLISS." The portion of the evidence objected to has been closely scrutinized, and read with the context, to see if the exception was well taken. The plaintiff had already testified, without objection, that he had paid the taxes on the North-Street property owned by the deceased, and mentioned in the letter, and also upon the Bork-Avenue property, the premises in question; that the same was paid by check that was signed in blank by Mr. Bliss, and that he filled in the amount in the body of the check, and gave it to the city treasurer; and that he knew Mr. Bliss' handwriting. He was then asked this question: "Have you seen him write?" and his answer was, he had, many times. The defendant's counsel objected that the evidence was incompetent under section 829, and moved to have the evidence stricken out upon the grounds stated. The objection was overruled, and the motion denied, and the defendant excepted. The plaintiff was a competent witness to prove the handwriting of the deceased. *Simmons* v. *Havens*, 101 N. Y. 427, 5 N. E. Rep. 73. The letter was then presented to the witness, and he further testified: "It is all in his [Bliss'] handwriting. I found his note upon my table upon the 9th of July, 1884, in that envelope that you have in your hand. In that envelope was a check signed, 'S. P. BLISS,' with this note; and that is the check I have spoken of, with which I paid the taxes spoken of. The address is in S. P. Bliss' handwriting." The letter was then offered in evidence, and also the envelope in which it was inclosed; and the defendant's counsel objected to its receipt, on the ground that it is part of a personal transaction and communication between the witness and Mr. Bliss, and as to that the witness is incompetent, under section 829. The objection was overruled, and an exception taken; and the letter and the address on the envelope were read. The objection was limited to the receipt of the papers in evidence; and, as their genuineness had been established, they were clearly admissible as some evidence relative to the controversy. It is not claimed that the plaintiff received the letter from the hands of the dece-

dent.  He was a competent witness to prove how it came into his hands, as it might have been placed upon his table by some other person than Mr. Bliss. The evidence given by the plaintiff after objections were interposed was limited to proving the handwriting of Mr. Bliss, and that the letter was found on his table.  No objection was taken to the plaintiff's evidence that the check was signed by Bliss, and filled in with the amount of the tax by the plaintiff, as they were probably undisputed facts, and could have been otherwise proved; and it is to be presumed, as no objection was interposed, that the defendant was willing to have these facts appear in the case.

We have examined all the other exceptions to which our attention has been called, and fail to discover any error in the rulings.

We think that some of the provisions of the judgment are improper, if not erroneous, as exposing to loss and misappropriation the rights and interests of the defendant in the property as the successor in interest of her late husband; and the judgment should be so modified as to fully protect her interests.  It is adjudged that the plaintiff, as surviving partner, is entitled to the property of the said firm, being the land in question; and the defendant is ordered to execute a grant of the premises to the plaintiff, so as to vest the title in him as survivor of the said firm; or, at her option, that she convey to the plaintiff, by like grant, one equal undivided one-half part of the land described in the complaint, as his individual interest therein.  The decree appoints a referee, naming him, to take and state the accounts and report thereon, and that the final judgment shall declare the sum which either party shall pay to the other for and on account of the said land.  No provision is made for the sale of the property under the order of the court by the referee or otherwise.  It was obviously the intention of the parties that the title should remain in the deceased partner as security for his advances; and, as this action is to close out the speculation, we think the proper course is to direct that the premises be conveyed to a referee, and sold under the order and direction of the court, and the proceeds distributed according to the rights and equities of the parties.  The court has no power, without the consent of the parties, to direct a partition of the premises; and without a sale it cannot be ascertained how the account stands between the parties, and whether there will be profits or losses.  We think the judgment should be modified in accordance with these views, and, as modified, affirmed, with costs.  All concur.

---

PEOPLE *ex rel.* POWERS *v.* ROBB *et al.*, Park Commissioners.

(*Supreme Court, General Term, First Department.*  January 24, 1890.)

MUNICIPAL CORPORATIONS—REMOVAL OF POLICEMEN—DELUSIONS.

Laws N. Y. 1887, c. 262, empowering the park commissioners of New York city to punish or dismiss members of the park police force on conviction of certain offenses, and to withhold the pay of any member of such force "for or on account of absence for any cause, without leave, lost or sick time, sickness, or other disability, physical or mental," does not authorize the removal of a member of such force on the ground that he is subject to insane delusions.

*Certiorari* to review a judgment of the park commissioners dismissing John Powers, a park policeman, from the force.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Lewis J. Grant,* for relator.    *Woolsey Carmalt,* for respondents.

DANIELS, J.  The relator was appointed to the position of a patrolman on the park police, and upon information received by the commissioners from the police surgeon and another physician, that the relator was subject to insane delusions, they removed him from the force.  This was done without notice to, or hearing on the part of, the relator, and the decision of the commissioners has been objected to as being without authority.  At the time when this