(21 App. Div. 361.)

BOYD v. BOYD et al.

(Supreme Court, Appellate Division, First Department.   October 8, 1897.)

1. EXECUTION OF INSTRUMENTS—FORGERY—BURDEN OF PROOF.

Certain lands owned by defendant R. were sold in 1872, under an execution against him, and in 1874 were redeemed in the name of S., plaintiff's intestate, as a junior creditor, and a certificate of redemption was issued to him.   This certificate was not filed or recorded until January 26, 1885,

nearly three years after the death of S.; and in the meantime the technical legal title had remained continuously in R. On the same date, upon presentation of an alleged assignment from S. to R.'s wife, the sheriff conveyed the property to her, and, after record of the deed, the premises passed by mesne conveyances to R. In an action brought against R., his wife, and a subscribing witness to the assignment, to set aside the assignment and the several conveyances, plaintiff's claim rested on the alleged forgery of S.'s name to the assignment and a conspiracy among defendants; while the defense was that the redemption had been effected with defendant's own money, that S. was merely his agent, and that the assignment was made by S. in pursuance of a resulting moral obligation. The signature of S. had been duly proved by the subscribing witness, before a notary public. *Held*, that the burden of proving that S. did not sign and deliver the assignment was upon plaintiff.

2. WITNESSES—COMPETENCY—ERROR CURED.

The court admitted testimony as to witnesses' knowledge of the signature of S. to the assignment, and the fact that S. made it, but then struck that testimony out, of its own motion. *Held*, that if it was objectionable under Code Civ. Proc. § 829, relating to evidence concerning personal transactions between a witness and a deceased person, the defect was thereby obviated.

3. SAME.

At a subsequent stage of the trial, R.'s wife and a subscribing witness were allowed to express their opinion as to the signature being in the handwriting of S., so far as that opinion was derived from their general acquaintance with S.'s handwriting. It did not appear from whom R.'s wife actually received the assignment, or by whom it was delivered to her, or whether it was delivered to her personally at all. *Held*, that the testimony of both witnesses was unobjectionable, under Code Civ. Proc. § 829.

4. SAME.

Defendant R. was allowed to testify to the signature of S. *Held* unobjectionable, under Code Civ. Proc. § 829.

5. SAME.

Defendant R. was also allowed to testify as to the fact that the money with which the redemption was made was paid by him. He did not testify that he paid it to S., nor that it was a transaction in which S. participated in any way. For all that appeared, defendant R. might have made the payment by his own hand. *Held* unobjectionable, under Code Civ. Proc. § 829.

Appeal from special term.

Action by David Boyd against Robert Boyd and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and PARKER, JJ.

Edward W. S. Johnston, for appellant.
Henry Daily, Jr., for respondents.

PATTERSON, J. This is an appeal from a judgment in favor of the defendants, dismissing the complaint on the merits, in an action brought to set aside certain assignments and conveyances of real estate, referred to in the pleadings, and to compel a reconveyance to the plaintiff. The premises in question are situated at the corner of Elm and Pearl streets, in the city of New York. Prior to April, 1872, they belonged to the defendant Robert Boyd, and the title thereto stood in his name. In October, 1872, they were sold under execution issued upon a judgment recovered by the people of the state of New York against Robert Boyd, and were purchased at such sale by Winchester Britton. The sheriff, by whom the sale

was conducted, executed a certificate (as required by law), which was dated January 11, 1873, and was filed and recorded a few days after that date in the office of the clerk of the city and county of New York. On the 4th of April, 1874, Samuel Boyd, the plaintiff's intestate, recovered a judgment in the marine court of the city of New York against Robert Boyd; and on the 9th of April, 1874, a demand was made in the name of Samuel Boyd, upon the sheriff, to redeem the premises, and the amount due upon the judgment recovered by the people of the state of New York was tendered. The sheriff received the money thus tendered, and issued to Samuel Boyd a certificate in due form of law, setting forth the relation of Samuel Boyd to the transaction. That certificate was duly acknowledged, but was not filed or recorded with the clerk of the city and county of New York until January 26, 1885, nearly 11 years after it was issued, and nearly three years after Samuel Boyd died, his death having occurred on the 16th day of April, 1883. No deed of the sheriff was ever made to Samuel Boyd; but on the 26th of January, 1885, a paper purporting to be an assignment from Samuel Boyd to Elise Boyd of the certificate of redemption was presented to the then sheriff, who made a conveyance of the property referred to therein to Elise Boyd, the wife of the defendant Robert Boyd, and that deed was recorded in the office of the register of the city and county of New York on September 14, 1885. Subsequently, Elise Boyd conveyed the premises to Joseph J. Carberry, by deed dated September 7, 1885; and Joseph J. Carberry, by deed dated September 14, 1885, conveyed the same premises to the defendant Robert Boyd. The claim of the plaintiff is that the signature to the assignment of the certificate of redemption, purporting to have been made by Samuel Boyd on the 2d of April, 1883, is a forgery, and that the defendants Robert Boyd, Elise Boyd, his wife, and Joseph J. Carberry conspired together to commit the crime imputed to them, to enable Robert Boyd, through this forged assignment and the subsequent conveyances, to acquire the purchaser's right in the premises, and despoil Samuel Boyd or his estate of this property.

The situation in which the case stands at the beginning of the inquiry, therefore, is that Samuel Boyd, a junior judgment creditor of the defendant Robert Boyd, redeemed these premises from a sheriff's sale under a prior judgment, and had issued to him a certificate of redemption; that he apparently continued to hold the same until April 2, 1883, without any change whatever having been made in the title to the premises, and without any deed from the sheriff having been made to him or any other person. Samuel Boyd was the nephew of the defendant Robert Boyd, and lived with him in his family. Robert Boyd was the owner of record of the premises, and the legal title to the same had never been actually taken out of him, by deed made by the sheriff or any one else. But the technical right to a deed inhered in Samuel Boyd, and the defendants' contention is that on April 2, 1883, that right was relinquished by him, by the assignment which it is alleged he made on that day to the defendant Elise Boyd. The defendant Robert Boyd further claims that, in all the transaction connected with the redemption of the

property, Samuel Boyd was merely his instrument and agent; that he (Robert Boyd) paid the money to effect the redemption; and, in substance, that the assignment of the certificate of redemption was merely in pursuance of a moral obligation on the part of Samuel Boyd to make the transfer to his uncle. The assignment of the certificate purporting to have been executed by Samuel Boyd was acknowledged before a notary public, by Carberry, the subscribing witness; and the burden of proof was upon the plaintiff to show by satisfactory evidence that Samuel Boyd did not in fact sign or deliver that instrument. The only proof of the alleged spuriousness of the signature of Samuel Boyd to the assignment was the testimony of an attorney (which will hereafter be referred to), and of two experts in handwriting, both of whom testified with great positiveness that the signature affixed to the instrument was not that of Samuel Boyd. They so testified from a comparison of the handwriting of that signature with signatures of Samuel Boyd proven or admitted to be genuine. They point out in very great detail the differences between the signature to the assignment and the genuine signatures of Samuel Boyd, and they both, from a comparison of the handwriting in which the signature to the assignment is made with confessedly genuine signatures of Robert Boyd, express the opinion that the name Samuel Boyd was written to the assignment by the same person who wrote the genuine signatures of Robert Boyd. In addition to this evidence of the expert witnesses, there is testimony of the attorney referred to, who had been the confidential adviser of Robert Boyd for more than 20 years, and who was his adviser in connection with the preparation and recording of the very assignment in question. That attorney testified to circumstances under which the assignment was originally prepared by him, and handed to Robert Boyd. He swears that the paper was prepared with a blank space for the assignee's name, at the request of Robert Boyd, and handed by him to Robert Boyd in that condition; that at the same time he prepared two other instruments for execution by Samuel Boyd, at the request of Robert Boyd; that the three instruments were delivered to Robert Boyd, and were subsequently returned to him by Robert Boyd with what purported to be the signature of Samuel Boyd upon them; that he (the attorney), at the request of Robert Boyd, and upon the return of the instruments, filled in the name of the assignee, there being still at that time a blank space in each instrument for the insertion of such a name; and that, at Robert Boyd's request, he recorded the instruments in question. He also swore that he knew that the signature of Samuel Boyd was in the handwriting of his client Robert Boyd. The learned judge at special term placed no reliance upon this testimony of the attorney, and it is not entitled to any weight. There is enough in this record to show a motive on his part to inculpate his former client in this alleged crime. He and this plaintiff had been sued by Robert Boyd, and, although he could only incriminate Robert Boyd by making himself a party to the fraud, he did not scruple to do so. He seems not to have hesitated to insert the name of an assignee in a paper already executed, nor to charge his

own client with a heinous criminal offense. He had found it to his interest to become the adviser of this plaintiff in instituting various suits against Robert Boyd for the recovery of large amounts of property, and how he came under the influence of the plaintiff is not left to conjecture. The testimony of the plaintiff discloses it. The attorney referred to had 12 or 13 suits pending for this plaintiff against Robert Boyd, involving property worth $400,000; and this plaintiff was supporting the attorney, for he says, "The man died in poverty and starvation, and I was keeping him, and I buried him." It is the part of charity to refrain from further comment upon the conduct and the testimony of this attorney, as the learned trial judge did, in his oral opinion delivered at the close of the trial. The story told by this witness was not credited, and should not be, and the case on the part of the plaintiff stands altogether upon the testimony of the expert witnesses. That testimony may be entitled to more consideration than the learned judge at special term was inclined to accord to it, but it was not conclusive by any means. It may be entitled to as much weight as the so-called "opinion evidence" of any other class of expert witnesses, but certainly to no more. There was evidence introduced on the part of the defendants of three disinterested persons who had seen Samuel Boyd write, and who knew his handwriting; and they all testified to their belief that the signature appended to the assignment of the certificate of redemption was the genuine signature of Samuel Boyd. The learned judge believed their testimony. He had before him the testimony of the experts, the testimony of the three witnesses referred to, the genuine and the spurious signatures of Samuel Boyd, and specimens of the handwriting of Robert Boyd, from which he could make a comparison, and determine the question of fact. Upon all this evidence, he was satisfied that the plaintiff had not made out, by a preponderance of testimony, that the signature of Samuel Boyd was a forgery, or that it had been affixed to the instrument in question by Robert Boyd; and, upon the whole testimony, we cannot say that he was not justified in reaching that conclusion.

Certain exceptions taken by the plaintiff to the rulings of the court on questions of evidence are strenuously insisted upon. It is claimed that the court erred in admitting testimony of Carberry and Elise Boyd as to the execution by Samuel Boyd of the assignment of the certificate of redemption; that such testimony was received in violation of the provisions of section 829 of the Code of Civil Procedure. It is urged that, as there is a charge of conspiracy in the complaint against Carberry, Elise Boyd, and Robert Boyd, they were each prohibited from testifying to anything relating to the transactions originating in, or growing out of, that assignment. A charge of conspiracy does not prove itself, nor does the evidence in this case establish any criminal or fraudulent concert of action between the three parties named; but whatever criticism might have been passed upon the action of the court in receiving the evidence of Carberry and Elise Boyd on that subject is now obviated, for the learned justice struck out the testimony of those witnesses during the course of the trial, and remarked, "The court of its own motion strikes out all of the

testimony of Carberry and Elise Boyd as to the genuineness of this signature, and as to the execution of the paper." It is said by counsel for the plaintiff that, notwithstanding that ruling of the court, it appears that, in deciding the case, the testimony thus stricken out was relied upon. In the oral opinion delivered at the conclusion of the trial, the court, in referring to the testimony on behalf of the defendants, did say that Mrs. Boyd and Carberry testified that the signature of Samuel Boyd was in the handwriting of that person; and the argument is made that the court, while, by its ruling, conceding that the testimony of these witnesses was incompetent, nevertheless relied upon it in deciding the cause. But an inspection of the record shows that the testimony that was stricken out as to the genuineness of the signature related to the knowledge of the witnesses of that particular signature. and the fact of Samuel Boyd having made it. After the court had expunged all that testimony from the record, Elise Boyd and Carberry were recalled, and allowed to express their opinions as to the signature being in the handwriting of Samuel Boyd; and when it was attempted by the defendant again to prove the transaction in which the signature was made, and what was said at the time, the court again excluded that line of testimony. So that the question really is upon that subject whether it was competent for those two witnesses to testify to their opinions as to the genuineness of the signature from their general acquaintance with the handwriting of Samuel Boyd. It is quite plain that the judge at special term excluded from the case the testimony of the personal knowledge of these two witnesses of the genuineness of the particular signature derived from their having seen it made, and admitted their testimony as to their opinion derived from acquaintance with Samuel Boyd's handwriting. There has been much discussion in the books concerning the competency of a witness to testify to the handwriting of a deceased party to a transaction when that testimony comes from a surviving party, and the authorities on the subject are somewhat conflicting; but there are cases in which such testimony has been allowed, and notably that of Simmons v. Havens, 101 N. Y. 427, 5 N. E. 73, where a plaintiff was permitted to testify that the signature to a deed under which she claimed title was in the handwriting of her mother (the grantor named in the instrument), and it was held that such evidence was not in violation of section 829 of the Code of Civil Procedure, because it did not involve a personal transaction between her and her mother, and so was competent. Simmons v. Havens, 101 N. Y. 433, 5 N. E. 73; Wing v. Bliss (Sup.) 8 N. Y. Supp. 500. This would apply to the situation as between Samuel Boyd and Elise Boyd. It does not appear from whom Elise Boyd actually received the assignment, or by whom it was delivered to her, or whether it was delivered to her personally at all. Carberry appears as the subscribing witness to the assignment. His testimony as to the alleged circumstances attending the execution of the paper was, as stated, all stricken out. There does not seem to be any valid objection to Carberry's testifying to the handwriting of Samuel Boyd.

It is also urged by the plaintiff that Robert Boyd was improperly allowed to testify as to the signature of Samuel Boyd. He was not

a party to the immediate transaction of the assignment to Elise Boyd, nor was he prohibited from testifying as to the fact of the money with which the redemption was made being paid by him. He did not testify that he paid that money to Samuel Boyd, nor that it was a transaction in which Samuel Boyd personally participated in any way. From all that appears, Robert Boyd made the payment for the redemption by his own hand, or through the attorney above referred to.

No other exception requires extended consideration. The court was right in rejecting the documentary evidence offered respecting findings of fact and other writing in an action tried in the superior court involving another piece of property. The manner in which the question arose in this case, and the issue upon which the evidence was offered, required the justice at special term to rule on that point as he did. The offered findings were not conclusive upon the defendants in this action, and they could not be used by the plaintiff to establish an estoppel by record in this case. On the whole case, we are satisfied that the plaintiff failed utterly to establish the averments of the complaint; and the court below was right in the conclusion at which it arrived, and any other would have been grossly unjust.

The judgment must be affirmed, with costs. All concur.